YORK, Plaintiff in error, v. STATE, Defendant in error.
BOWIE, Plaintiff in error, v. STATE, Defendant in error.

*Nos. State 9, 10, 65. Argued January 7, 1970.—Decided February 3, 1970.*
(Also reported in 173 N. W. 2d 693.)

For the plaintiff in error James C. York there was a brief and oral argument by *Alvin R. Ugent* of Milwaukee.

For the plaintiff in error Earl David Bowie there was a brief and oral argument by *Gregory Gramling, Jr.,* of Milwaukee.

For the defendant in error the cause was argued by *Michael Ash,* assistant district attorney of Milwaukee county, with whom on the brief were *Robert W. Warren,* attorney general, and *E. Michael McCann,* district attorney.

WILKIE, J. As to the conviction of both defendants, one issue appears in common to both cases: Should the trial court have excluded the testimony of Detective Cornell that the piece of cloth found at the burglary scene and Bowie's coat were similar?

We assume that both defendants sufficiently objected to the introduction of this testimony.[1]

Objection is made to the testimony of Detective Cornell regarding the piece of cloth and the tear in Bowie's coat contending it should have been excluded for two reasons: (1) It violates the best-evidence rule, and (2) it is merely opinion evidence.

### Best-Evidence Rule.

When proving a proposition of fact a litigant will undoubtedly try to do so by the most reliable and enlightening evidence available. There is also pressure on the litigant to prove up his case by strong and clear evidence

---

[1] Defendant York's counsel did not object at the trial; neither did he make it a ground for his motion for a new trial. He apparently makes his first objection on this review. Since defendant Bowie objected in the proper way at the proper time we reach the merits of the objection.

for not to do so runs the risk that natural suspicion, sharpened by adverse comment of opposing counsel, may arise from failure to adduce cogent proof which the trier of fact believes should be available if the proponent's contention as to the facts is sound.

When what is being proved is the content of a writing, this pressure is elevated to the full force of a rule of law which requires that the original writing must be produced, unless it is shown to be unavailable for some reason. This is known as the best-evidence rule. It has come to be recognized that the best-evidence rule is applicable only when attempting to prove the contents of a writing,[2] and that it has no application to a case where a litigant seeks to prove a fact which has an existence independent of any writing.[3]

Counsel for both defendants concede this much but argue that the best-evidence rule should be extended to the instant situation. The state characterizes this argument as calling for the creation of the "better-evidence rule." According to the state, the defendants are asking for a rule which would admit only the better evidence, in this case the piece of material and coat itself, and exclude any lesser evidence such as testimony concerning the coat and piece of material. The state argues this court should reject this rule. We agree.

This lesser evidence presented here does not raise a question of admissibility, but rather goes to the weight the evidence will be given.[4] It is undoubtedly true that the actual piece of material and the coat, or the FBI

[2] See generally 4 Wigmore, Evidence (3d ed.), pp. 301–304, secs. 1173–1175; McCormick, Evidence (hornbook series), pp. 408, 409, secs. 195, 196. See also Ernst v. Greenwald (1967), 35 Wis. 2d 763, 151 N. W. 2d 706. See 9A U. L. A., Rules of Evidence, Rule 70.

[3] See Goetsch v. State, ante, p. 285, 172 N. W. 2d 688. See also McCormick, Evidence (hornbook series), p. 411, sec. 199.

[4] See State v. Harris (1968), 40 Wis. 2d 200, 161 N. W. 2d 385; State v. Schmear (1965), 28 Wis. 2d 126, 135 N. W. 2d 842.

report, would be entitled to greater weight than the testimony of the officer that the piece of material and the coat were similar. However, it does not follow from this that because the coat and piece of material were not produced, the officer's testimony should be excluded.

Although there is indication in the record that the prosecution knew or should have known that the coat and swatch would probably not be returned from the FBI lab in time for the trial, there is nothing in the record to indicate that this evidence was deliberately sent out of the jurisdiction.

### Opinion Evidence.

An attack is also made on the testimony of Detective Cornell claiming that this testimony should have been excluded as opinion evidence.

There is no doubt that Detective Cornell's testimony that the piece of cloth found on the nail was similar to Bowie's coat in color and weave and was approximately the same size as the tear in Bowie's coat was an impression gained by a firsthand observation of the facts. This is a first-class example of the difficulty raised in an effort to separate opinion from fact. This difficulty in distinguishing between "opinion" and "fact" was highlighted in a criticism of the opinion rule by Judge LEARNED HAND, when he stated:

". . . The truth is, as Mr. Wigmore has observed at length (sections 1917–1929), that the exclusion of opinion evidence has been carried beyond reason in this country, and that it would be a large advance if courts were to admit it with freedom. The line between opinion and fact is at best only one of degree, and ought to depend solely upon practical considerations, as, for example, the saving of time and the mentality of the witness. It is hardly ever reversible error to admit such evidence; its foundation may generally be as conveniently

left to cross-examination. Every judge of experience in the trial of causes has again and again seen the whole story garbled, because of insistence upon a form with which the witness cannot comply, since, like most men, he is unaware of the extent to which inference enters into his perceptions. He is telling the 'facts' in the only way that he knows how, and the result of nagging and checking him is often to choke him altogether, which is, indeed, usually its purpose.

"It is a good rule as nearly as one can, to reproduce the scene as it was, and so to correct against the personal equations of the witnesses. But one must be careful not to miss the forest for the trees, as generally happens, unless much latitude is allowed. . . . But, except in extreme cases, where we can see that harm is done, all such matters are in the discretion of the trial judge." [5]

So, in Wisconsin the general rule has been adopted that "The admission of opinion evidence rests largely in the discretion of the court." [6]

Certainly, it is permissible for a witness to give a shorthand rendition of a total situation or a description of collective facts without his testimony colliding with a rule excluding opinions. A witness is generally permitted to testify about a personal experience or knowledge of a sensation, although the witness' answer is his opinion of the matter. The accuracy or strength of the testimony is to be tested by cross-examination.

Dealing with this subject, McCormick has said:

"It is believed that the standard actually applied by the trial judges of today approaches more nearly the principle espoused by Wigmore, namely, that the opinion should be rejected only when it is superfluous in the sense that it will be of no value to the jury." [7]

---

[5] *Central Railroad Co. of New Jersey v. Monahan* (2d Cir. 1926), 11 Fed. 2d 212, 214.

[6] *See Gospodar v. Milwaukee Automobile Ins. Co.* (1946), 249 Wis. 332, 338, 24 N. W. 2d 676, 25 N. W. 2d 257; 32 C. J. S., *Evidence*, p. 85, sec. 449.

[7] McCormick, *Evidence* (hornbook series), p. 23, sec. 11.

Wigmore has stated his view that the opinion rule should not generally exclude a witness' testimony as to such things as the corporal appearance of persons and things; the capacity or tendency of an act or a machine; the probability or possibility of an event, form, identity, speed, time, size, weight and direction.[8]

Here, Detective Cornell was permitted to testify regarding the size, shape, color, and weave of the swatch of material and the coat. He was then permitted to testify that he observed that the piece of material and defendant Bowie's coat were similar. Defense counsel were permitted extensive cross-examination of Detective Cornell regarding his observations of the swatch and the coat. Under the record presented by this case, there clearly was no abuse of discretion by the trial court in permitting Detective Cornell to testify that he observed that the piece of material found at the scene of the burglary and defendant Bowie's coat were similar.

### Identity of Bowie at the Trial.

The second major issue presented by this review relates only to defendant Bowie: Was it error for the trial court to permit testimony regarding confessions made by Bowie when the police officer to whom such confessions were made could no longer identify him?

Defendant Bowie argues that since Detective Behrendt could not identify him at the trial as the person who confessed, there is nothing to link him to the confession and consequently, all testimony relating to this confession should not have been admitted. In other words, Bowie claims that no showing has been made that the person who gave such a confession and the person who was then on trial in court were one and the same.

We do not agree. There is ample evidence in this record to establish that the Bowie who confessed the

[8] See 7 Wigmore, Evidence (3d ed.), pp. 113–141, secs. 1974–1978.

crime to Detective Behrendt and the Bowie who was on trial for the crime were the same individual.

Detective Behrendt testified that he had questioned a person identified to him as Earl David Bowie in the interrogation room of the detectives' assembly at 10 a. m. on March 22, 1968, and had obtained a confession from him. Detective Cornell, although he did not testify to hearing defendant Bowie confess to Detective Behrendt, did testify that he had seen Detective Behrendt questioning defendant Bowie at the detective bureau on March 22, 1968, at about 10 a. m.

This testimony sufficiently identifies the defendant Bowie as the person who confessed to Detective Behrendt. The testimony regarding the confession was properly admitted.

Since Detective Behrendt's testimony concerning the confession was admissible, it follows that the notes made by Detective Behrendt during the confession identifying the person confessing as Earl David Bowie should not necessarily, as defendant Bowie claims, have been excluded as hearsay and self-serving. These notes appearing on what was called the "show-up sheet" were merely additional indications of the identity of defendant Bowie as the person who confessed.

### York's Sentence.

The final issue raised by this review relates only to defendant York. This issue is: Was it error for the trial court, in sentencing him, to consider York's prior criminal record?

York concedes that the trial court may properly consider the prior criminal record of an individual in order to determine an appropriate sentence; [9] however, he now

---

[9] *See Waddell v. State* (1964), 24 Wis. 2d 364, 129 N. W. 2d 201. *See also Deja v. State* (1969), 43 Wis. 2d 488, 168 N. W. 2d 856.

claims that the trial court committed error by relying on his prior criminal record which might have contained inaccuracies. He claims that the trial court relied heavily on the fact that it appeared from his prior record that he had previously been convicted of burglary, when in fact this was not true.

The first problem facing this defendant in raising this issue before this court is that he failed to raise it below, either at the time of sentencing or at motions after verdict.

However, since there are two writs of error in this case, one from the judgment and one from the order of the trial court denying York's motion for a new trial, this is not similar to the situation in *State v. Ruud*.[10] In that case, this court refused to review an alleged error committed by the trial court, on appeal from only the order denying a new trial, when such alleged error was not presented to the trial on the motion for a new trial. Here the writ of error is from the judgment as well as the order denying a new trial. However, here there was no objection made at the time of the sentencing that the record was inaccurate.

Nevertheless, in its discretion this court has reviewed this question and concludes that the claim is without merit.

While it is clear that the trial court, in sentencing, did rely on York's prior criminal record, it is not so clear that this was in any way detrimental to the defendant.

The trial court in its statement prior to sentencing indicated that it would be reluctant to give consideration in sentencing to individuals who commit similar offenses, and also to those who violate probation. Although here it is not clear whether York had previously ever been convicted of burglary,[11] it is clear that he was at the

---

[10] (1969), 41 Wis. 2d 720, 165 N. W. 2d 153.

[11] It is perhaps noteworthy that York's defense counsel in his brief does not contend that York had in fact never been convicted

time of sentencing either on parole or probation for a prior offense. Moreover, the maximum sentence that could have been imposed for this offense was ten years; York and Bowie were given relatively light sentences of three years. There is nothing to show that the trial court abused its discretion.

Moreover, it should be pointed out that even if the sentencing procedure was found to be in error, it would not entitle York to a new trial but only to an opportunity to be resentenced.[12]

We are satisfied that the convictions of both York and Bowie, and the questioned sentencing of York, should be affirmed.

*By the Court.*—Judgments and order affirmed.

of burglary, only that the record relied on by the trial court in sentencing might have been inaccurate.

[12] *See State v. Tuttle* (1963), 21 Wis. 2d 147, 124 N. W. 2d 9.