STATE, Respondent, v. BLAKE, Appellant.

*No. State 57.   Argued March 2, 1970.—Decided March 31, 1970.*
(Also reported in 175 N. W. 2d 210.)

For the appellant there was a brief and oral argument by *George P. Kersten* of Milwaukee.

For the respondent the cause was argued by *Michael Ash,* assistant district attorney of Milwaukee county, with whom on the brief were *Robert W. Warren,* attorney general, and *E. Michael McCann,* district attorney.

ROBERT W. HANSEN, J. The defendant's basic complaint is that his conviction on the first burglary rested in part on the testimony of Smokovich, who testified following a grant of immunity on motion of the state pursuant to sec. 885.34, Stats.[1] The claim that a fair

---

[1] "Whenever any person shall refuse to testify or to produce books, papers or documents when required to do so in any criminal examination, hearing or prosecution for the reason that the testimony or evidence required of him may tend to criminate him or subject him to a forfeiture or penalty, he may nevertheless be compelled to testify or produce such evidence by order of the court on motion of the district attorney. But no person who testifies or produces evidence in obedience to the command of the court in such case shall be liable to any forfeiture or penalty for or on account of any transaction, matter or thing concerning which he may so testify or produce evidence; but no person shall be exempted from prosecution and punishment for perjury committed in so testifying."

trial was thus denied rests upon three contentions: one hinted at, one clearly implied, and one specifically spelled out.

## Constitutionality.

Defendant suggests that there may be a constitutional flaw in permitting a trial court to grant immunity and order a witness to testify. There is no basis for such suggestion. The general rule is that a witness must answer all questions asked, assuming he has knowledge of the material facts involved.[2] One notable exception is the right of a witness to refuse to answer on the ground that such answer would tend to incriminate him.[3] If the witness does "take the fifth," the state may utilize sec. 885.34, Stats., and move that the court grant the witness immunity from prosecution and order that he answer.[4] If the witness still refuses to answer, he may be held in contempt. The statute and the procedure it outlines have been held to be entirely constitutional.[5]

## Reluctance to testify.

Defendant's brief points out that the testimony of the prosecution's witness was "given after Smokovich was

---

[2] ". . . As a general rule, a witness in the course of his examination must answer every question which is pertinent to the issues; he cannot refuse to answer a relevant question from mere caprice or sentiment or because the disclosure is personally distasteful." 98 C. J. S., *Witnesses*, sec. 430, p. 239. *See also:* 58 Am. Jur., *Witnesses*, pp. 38, 39, sec. 29.

[3] U. S. Const., fifth amendment; Wis. Const., art. I, sec. 8.

[4] *State ex rel. Rizzo v. County Court* (1966), 32 Wis. 2d 642, 646, 146 N. W. 2d 499, 148 N. W. 2d 86; certiorari denied *sub nom. Wisconsin v. Rizzo* (1967), 386 U. S. 1035, 87 Sup. Ct. 1486, 18 L. Ed. 2d 597.

[5] *Id.* at page 648; *State ex rel. Jackson v. Coffey* (1963), 18 Wis. 2d 529, 118 N. W. 2d 939.

granted immunity," and that "until the immunity grant, Smokovich would not so testify." Implied is that reluctance of a witness to testify without being ordered by the court to do so is not to be followed by a grant of immunity and a court direction to answer. Here the trial court found that, by answering, the witness might have subjected himself to a charge of either theft or drunkenness. Such possibility that his testimony might in fact subject him to prosecution is not seriously or successfully disputed.

The trial court was not required to go further to seek to determine whether there were other reasons why the witness was reluctant to testify without being ordered to do so. That there may have been no self-incriminating testimony given by Smokovich or that he may have been more concerned about the repercussions of his testifying voluntarily do not affect the propriety of the state's motion, the grant of immunity and the court's order that he answer the questions asked. If an accompanying result is that the witness cannot be subsequently accused of having volunteered testimony damaging to the defendant, what harm is there in that? The doctrine of Omerta, or death to those who voluntarily give information to the authorities, may be given recognition in the ranks of an organized underworld. It has no standing in a court of law. Courts have every reason to seek to protect those who testify in judicial proceedings against the fact or fear of post-testimony retributive violence or vengeance.

*Circumstances.*

The defendant specifically spells out and chiefly relies upon the assertion that the grant of immunity here was used "to obtain a change in the testimony of the prosecution's own witness" and, therefore, constituted an im-

proper use of the statute under the circumstances. A review of the record does not support such contention.

When Smokovich took the witness stand, he stated his name, age, address and that he was acquainted with the defendant. He then identified the defendant, stating that he had known him for approximately one year. The prosecutor then asked:

"*Q.* And were you in his company on the evening of January 13, 1967?
"*A.* If I don't have to testify I would rather not.
"*Court:* You are entitled to take the fifth amendment as to that which you think might incriminate yourself but that is your only reason for not testifying."

The prosecutor then questioned the witness concerning his conviction arising from the burglary on the evening of January 13, 1967. Smokovich stated that he had been convicted and sentenced for his participation in the safe stealing. Smokovich then testified that he was with the defendant on the night in question, that they had been drinking together, and that he had talked with the defendant that evening. Asked what they had talked about, Smokovich stated that he did not remember and that he had been drunk that night. After an attempt, blocked by defense counsel objections, to introduce certain testimony from the preliminary hearing, the state moved that the witness be granted immunity. The request was denied or deferred until further examination of the witness to determine whether the witness was in fact exercising his privilege against self-incrimination.

When asked again if he was at the scene of the crime on the night in question, Smokovich stated:

"*A.* Do I have to answer his questions?
"*Q.* Are you asking for the right to take the fifth amendment?

"*Court:* Yes, you must answer his question unless you exercise your constitutional right not to incriminate yourself. You must answer his questions.

". . .

"*Witness:* Can I plead the fifth?

"*Court:* If you want to.

"*Witness:* Yes."

The prosecutor then asked the court to determine whether the witness was entitled to invoke the fifth amendment under the circumstances. The court found a possibility of self-incrimination as to drunkenness or theft charges and recognized the witness' right to invoke the fifth amendment. Following a recess, and a subsequent refusal of the witness to answer questions, the state moved that immunity be granted and the witness directed to answer. The court granted the motion and instructed the witness that he now must answer. Smokovich then testified as to the burglary on the night of January 13, 1967, implicating the defendant. On this record it is clear that the witness based his refusal to answer questions on the ground of possible self-incrimination, that the trial court found that he was entitled to invoke the fifth amendment as the basis for refusing to answer, that the state moved for a grant of immunity and direction to testify after the witness had clearly based his refusal to answer questions on his invocation of the fifth amendment. The state moved to grant the witness immunity following the express statement of the witness that he was claiming his privilege against self-incrimination. The court deferred granting immunity until it was entirely clear that the witness was in fact relying upon his rights under the fifth amendment before granting the motion for an immunity grant and directing the witness to testify. There was full and complete compliance with the provisions of sec. 885.34, Stats.

The additional complaint of the defendant that the trial court considered the first conviction in entering sentence on the second conviction vanishes with the affirming of such first conviction. A trial court may properly consider prior convictions in choosing between sentencing alternatives in a pending case.[6]

*By the Court.*—Judgments and order affirmed.

