SCHENK, Plaintiff in error, v. STATE, Defendant in error.

*No. State 181.   Argued May 6, 1971.—Decided June 25, 1971.*
(Also reported in 187 N. W. 2d 853.)

602

For the plaintiff in error there were briefs and oral argument by *Charles Rowan* of Milwaukee.

For the defendant in error the cause was argued by *Robert D. Martinson,* assistant attorney general, with whom on the brief were *Robert W. Warren,* attorney general, *William A. Platz,* assistant attorney general, and *E. Michael McCann,* district attorney of Milwaukee county.

WILKIE, J. Three issues are presented by defendant's writs of error. They are:

1. Was defendant's arrest valid? It was.

2. Should the trial court, sua sponte, have instructed the jury on the defendant's possible intoxication? No.

3. Was pretrial publicity of the crime so prejudicial as to require the trial court, sua sponte, to order a new trial or deferral of the trial? Again, we think not.

### 1. *The arrest.*

Defendant contends that the police had no probable cause to arrest him on the night of October 27, 1969, and that consequently any statements he made to police while he was in custody were inadmissible against him

at trial. It should be noted that the arrest is challenged only as it affects the validity of defendant's confession. Defendant did not challenge the arrest at his preliminary hearing; hence, he may not now challenge the jurisdiction of the court to conduct further proceedings.[1]

Did the police have probable cause to arrest defendant?

According to the testimony of one of the arresting officers, these officers knew of the murder, the identity of the victim, and that defendant was the last person known to have seen her alive. On this information the police proceeded late on Monday night to defendant's place of employment. When defendant appeared, the officers asked his identity and whether he knew the victim. He replied that he did and that he assumed they would be looking for him because he was the last person to see the victim. When asked how he knew the victim did not come home, he either did not reply or did not reply audibly. At this point the officers placed him under arrest for murder and advised him of his constitutional rights.

The trial court determined that the police had probable cause to arrest defendant. It concluded that defendant was adequately warned of his constitutional rights and that any and all statements to the police were voluntarily given. These determinations clearly are not against the great weight and clear preponderance of the evidence.[2]

The police did not arrest defendant immediately upon his appearance at his place of employment. The police first asked the defendant his identity, and whether he knew the victim. Defendant volunteered that he was the last person seen with her. When asked how he knew this, he did not reply. Under all these circumstances, this was clearly sufficient to " 'lead a reasonable police officer to believe that the defendant probably committed

---

[1] *Massen v. State* (1969), 41 Wis. 2d 245, 163 N. W. 2d 616.

[2] *State v. Carter* (1966), 33 Wis. 2d 80, 91, 146 N. W. 2d 466.

a crime.' " [3] The trial court so found and we see no reason for upsetting its findings. [4]

The police having probable cause to arrest the defendant and the trial court further correctly finding that he was adequately warned of his constitutional rights and that any and all statements which he made to the police were voluntarily given, we do not reach any further question about the admissibility of these confessions.

## 2. *Instruction on intoxication.*

Defendant urges that the jury should have been instructed as to the defendant's possible intoxication on the night of the murder. Defendant made no request that such an instruction be given, nor did defendant enter any objection to the instruction that was given. The failure to request an instruction on intoxication as a defense, *i.e.,* negativing a state of mind essential to the crime, precludes a defendant from raising the issue here as a matter of right. [5]

This court may, in its discretion, consider the merits of defendant's claim of error in this regard. [6]

". . . A trial court is not required to give a requested instruction unless the evidence reasonably requires it, and this is true even though the requested instruction asserts a correct rule of law." [7]

[3] *State v. Herrington* (1969), 41 Wis. 2d 757, 770, 165 N. W. 2d 120.

[4] *Id.*

[5] *Pamanet v. State* (1971), 49 Wis. 2d 501, 510, 182 N. W. 2d 459; *Mitchell v. State* (1970), 47 Wis. 2d 695, 699, 177 N. W. 2d 833; *Flowers v. State* (1969), 43 Wis. 2d 352, 361, 168 N. W. 2d 843.

[6] *Mitchell v. State, supra,* footnote 5.

[7] *Belohlavek v. State* (1967), 34 Wis. 2d 176, 179, 148 N. W. 2d 665.

Although this is the rule with respect to requested instructions, it is equally applicable to instructions required to be given sua sponte. Therefore, we must determine whether the evidence reasonably required that the trial court give the desired instruction.

We are satisfied that there is no evidence that defendant was intoxicated at the time of the crime. One officer did testify that in defendant's oral confession he stated that he "figured he had 15 bottles of beer" while at the Old Mill Tavern. This officer also testified that in defendant's oral confession the defendant told him that he and a friend went to a tavern where he had "four or five brandies and coke" and that the defendant later went to the Old Mill Tavern.

The only testimony about the effect of this drinking was by Mrs. Hayburn, and her testimony is as follows:

"*Q.* Was George Schenk drinking beer? *A.* Yes.

"*Q.* Had you all had about the same amount? *A.* I don't know how many he had. I know we must have had about 5 or 6 beers.

"· · ·

"*Q.* How many bottles of beer did you have between the hours of 11:30 or 12:30 and the time you left the tavern, when Mr. Schenk was in your presence? *A.* I can't remember.

"· · ·

"*Q.* Now, you say that the three of you left the tavern at about 2:30 to 3:00 a. m., on the 26th of October, is that the time? *A.* Yes, sir.

"*Q.* Now, at that time in your opinion, was Mr. Schenk intoxicated? *A.* It didn't appear to me that he was.

"*Q.* Was he talking abusively to you or your girl friend? *A.* No sir.

"*Q.* Was he in any way foisting himself onto you, or his attentions onto you or your girl friend? *A.* No, sir."

From this testimony of Mrs. Hayburn, who stated that the defendant did not appear intoxicated and conducted himself properly while in her presence, the trial court

could reasonably have concluded that there was no evidence of intoxication.

Defendant not only did not testify in his own defense, but the defense actually presented no evidence of its own. This gives further support to the fact that the trial court did not, on its own, raise this affirmative defense to the state's case. In addition to the lack of evidence as to defendant's intoxication, there is considerable evidence that he was not intoxicated at the time of the actual crime. According to the statement that defendant made to the police officer:

1. After attempting to "make out" with the victim and being rebuffed, he took the knife from his pocket (apparently in full view of the victim) and placed it on the car seat; he then made advances toward the victim.

2. When he was again rebuffed, he stabbed her.

3. After stabbing her he struck her to stop her noisy breathing; he made no attempt to help her.

4. He drove the victim's car to an empty field where he stripped the victim's body of clothes and jewelry to *prevent identification*, and then dragged it into the field.

5. He then drove the victim's car to an apartment project where he (a) threw the murder weapon into some bushes, (b) threw the car keys into a field, and (c) walked home.

6. On the way home he threw the victim's purse containing her jewelry into a sewer.

7. He was also able to remember all of these details which were verified by the police.

All of these precise recollections of what transpired both before and after the stabbing leave little doubt that the defendant was not intoxicated at the time of the offense and that the trial court would have been justified in refusing a request for the instruction, if such had been made, let alone giving the instruction sua sponte.

### 3. *Pretrial publicity.*

Defendant contends that certain newspaper, television and radio reports about the time that the body was discovered and the defendant arrested were so prejudicial as to require a change of venue by the court, sua sponte.

No request was made at any time for a change of venue or for a deferral of the trial to a later date. No evidence of pretrial publicity was presented to the trial court until postconviction motions were made. There is no evidence in the record that indicates the jurors were aware of the publicity or that the trial court was even aware of the publicity. There is nothing in the record to indicate that the pretrial publicity was actually prejudicial to the defendant. The *voir dire* proceedings were not transcribed. No difficulty is shown by the record, nor is any alleged, in the selection of a jury, which proceedings took only four and one-half hours.

In short, defendant asks this court to review the newspaper clippings filed with the record in support of his postconviction motions, together with the affidavit of defendant's sister as to these newspaper, television and radio accounts, and to conclude therefrom, as a matter of law, that the nature and scope of the publicity precluded a fair trial.

While in some cases the trial court may be required to act sua sponte,[8] there is nothing presented in this record which would indicate the need for such action. "[T]he likelihood of such unfairness has not been shown factually herein." [9]

The items of alleged improper publicity all occurred over three months prior to defendant's trial and oc-

---

[8] *State v. Alfonsi* (1967), 33 Wis. 2d 469, 480, 481, 147 N. W. 2d 550.

[9] *State v. Kramer* (1969), 45 Wis. 2d 20, 30, 171 N. W. 2d 919.

curred during a period of two days after discovery of the victim's body and defendant's arrest. These items were:

(a) Four news articles, three in the Milwaukee Sentinel on October 28 and 29, 1969, and one in the Milwaukee Journal on October 28, 1969;

(b) Two television broadcasts over WITI–TV on the evening of October 28, 1969;

(c) One radio broadcast over WOKY radio on the morning of October 29, 1969.

Since the defendant made no showing of any prejudice existing at the time of trial, or that he failed to receive a fair trial in any respect, purely because of alleged prejudice in this pretrial publicity, we are satisfied that the trial court did not abuse its discretion in refusing to order a new trial on this ground, and that it committed no error in not ordering a change of venue or a deferral of the trial to a later date, sua sponte.

Defendant contends that much of the publicity did not meet the Statement of Principles and Guidelines on the Reporting of Criminal Proceedings as adopted in February, 1969, by the joint committee of the state bar and the news media of Wisconsin. The final determination of whether pretrial publicity has resulted in any community prejudice existing at the time of trial is to be made in each case. Complete compliance with the voluntary principles and guidelines adopted by the joint committee of the state bar and the news media of Wisconsin may not guarantee that there will be an absence of prejudicial pretrial publicity, but we encourage compliance with those principles and guidelines.

*By the Court.*—Judgment and order affirmed.