STATE, Respondent, v. BOUTCH, Appellant.

*No. State 101.   Argued September 10, 1973.—Decided
October 2, 1973.*
(Also reported in 210 N. W. 2d 751.)

For the appellant there were briefs by *Patrick R. Doyle* and *Doyle, Woodmansee & Asfoor* of La Crosse, and oral argument by *Patrick R. Doyle*.

For the respondent the cause was argued by *Robert D. Martinson*, assistant attorney general, with whom on the brief was *Robert W. Warren*, attorney general.

HANLEY, J.   The appeal raises the following issues:

1. Was the evidence sufficient to support the finding of guilt?

2. Did the trial court err in refusing to submit a requested instruction on entrapment?

3. Was the prosecution of the defendant an exercise in discriminatory law enforcement?

4. Did the manner of selecting the jury violate the defendant's right to an impartial jury and his right to due process of law?

*Sufficiency of evidence.*

The evidence showed that the defendant was present in the Varsity Bar on the evening of February 19, 1971. Defendant had a conversation with Susan Naas concerning the defendant's assisting her in the sale of methamphetamine.

"*Q.* Did you have a conversation with Mr. Boutch at the Varsity?
"*A.* Yes.
"*Q.* Concerning what?
" . . .
"*A.* I had a small package of drugs that I wanted to get rid of. I asked him if he could help me.
" . . .
"*Q.* What further conversation did you have with Mr. Boutch concerning his assisting you in disposing of the meth, or the speed?
"*A.* I had asked him if he knew anyone that would want it.
" . . .
"*Q.* What did he tell you?
"*A.* That he thought he might."

Shortly after this conversation, the defendant returned and introduced Kim Kasabuske to Susan Naas. Boutch stated to Susan that Kasabuske was interested in purchasing drugs.

There was evidence that Boutch actively searched out Kasabuske so as to interest him in the purchase of the drug.

"*Q.* What did you talk about?

"*A.* Mr. Boutch asked me if I would be interested in buying any 'meth' which is the street term for methamphetamine.

"...

"*Q.* All right. What followed this conversation?

"*A.* Mr. Boutch told me that he could get me some for $25 or he knew of some available for $25, but he thought if I really wanted it he could get the price down to $20.

"*Q.* What did you tell him?

"*A.* If it was good it would be worth $20 and I would take it."

After this conversation, Boutch spoke to Susan Naas. He returned to Kasabuske and informed him that the "meth" could be had for $20. Defendant then introduced Kasabuske to Susan Naas and the sale was completed.

The defendant argues that he was acting on behalf of the buyer (the state agent) and not on behalf of the seller of the dangerous drug; that he was not in a position whereby he could intend to aid and abet in the sale of the said drug. It is claimed that the defendant intended only to facilitate the successful purchase of said drugs on the part of the state agent and was in no way involved in the sale of the dangerous drug. We find no merit in this contention.

In the light of the evidence adduced, the jury was justified in concluding that defendant intentionally aided and abetted Susan Naas in the sale of the dangerous drug.

Defendant's claim that he acted solely as an agent of the state in the purchase of the "meth" is contrary to the evidence. The jury could reasonably infer that there existed a prior arrangement between the defendant and Susan Naas as to his efforts in aiding her to consummate the sale. The evidence adduced was sufficient to support the conviction.

*Instruction on entrapment.*

The defendant claims the court erred in refusing to instruct the jury as to the issue of entrapment. We do not agree. A trial court is not required to give a requested instruction unless the evidence reasonably requires it.[1] The record is devoid of any evidence which would reasonably so require such an instruction. The trial court properly observed that entrapment was not an issue in this case. It was not error to refuse such an instruction.

*Discriminatory enforcement.*

The defendant, in a three-pronged attack, claims that he was the victim of unjust discrimination. Such discrimination, he claims, resulted from the granting of transactional immunity by the trial court to Susan Naas in order to insure her testimony against the defendant.

Initially, the defendant contends that the trial court is required under sec. 972.08, Stats., to determine not only the basis upon which the witness refuses to testify is because such testimony may tend to incriminate her, but also to delve into other "circumstances." The defendant, however, fails to specify what those "circumstances" are. Such a contention is without statutory or constitutional basis. All that the trial court must determine under sec. 972.08 (1), is that the refusal of the witness to testify is grounded on the witness' fifth amendment rights. The trial court is not required to go further and determine whether there are other reasons why the witness is reluctant to testify without being ordered to do so. The statute and procedure thereby provided have been held to be constitutional. *State v. Blake* (1970), 46 Wis. 2d 386, 390, 175 N. W. 2d 210.

Secondly, the defendant claims that the district attorney committed an abuse of discretion in moving to grant

---

[1] *Schenk v. State* (1971), 51 Wis. 2d 600, 606, 187 N. W. 2d 853.

Susan Naas immunity in order to compel her to testify and insure the conviction of her agent, Patrick Boutch. We find no abuse of discretion. The action of the district attorney is well within his discretionary power.

". . . There is no obligation or duty upon a district attorney to prosecute all complaints that may be filed with him. While it is his duty to prosecute criminals, it is obvious that a great portion of the power of the state has been placed in his hands for him to use in the furtherance of justice, and this does not per se require prosecution in all cases where there appears to be a violation of the law . . . ." *State ex rel. Kurkierewicz v. Cannon* (1969), 42 Wis. 2d 368, 378, 166 N. W. 2d 255.

Finally, the defendant's claims that the offer of immunity from the state for testimony by one involved in a criminal transaction against another individual involved in the same criminal transaction deprives that individual of equal protection of the laws, is violative of due process and is an exercise in invidious discrimination are without merit. *See: United States v. Dalton* (5th Cir. 1972), 465 Fed. 2d 32; *Newman v. United States* (D. C. Cir. 1967), 382 Fed. 2d 479. In the absence of an allegation and proof that the defendant is a member of a class being prosecuted solely because of race, religion, color or other arbitrary classifications, or that he alone is the only person who has been prosecuted under this statute, the defendant's claim cannot come within the class of unconstitutional discriminatory enforcement. *Yick Wo v. Hopkins* (1886), 118 U. S. 356, 6 Sup. Ct. 1064, 30 L. Ed. 220; *McFarland v. American Sugar Co.* (1916), 241 U. S. 79, 36 Sup. Ct. 498, 60 L. Ed. 899.

". . . [t]he conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation. Even though the statistics in this case might imply a policy of selective enforcement, it was not stated that the selection was deliberately based on an unjustifiable standard such as race, religion, or other arbitrary classification. Therefore grounds supporting a finding of

a denial of equal protection were not alleged." *Oyler v. Boles* (1962), 368 U. S. 448, 456, 82 Sup. Ct. 501, 7 L. Ed. 2d 446.

*Jury selection.*

The defendant claims that the selection of the jury violated his rights to a trial before an impartial jury and to due process. He bases his claim on the manner in which the jury was selected and the jury's previous contact with similar cases and identical witnesses.

The jury in question was selected from an enlarged panel of 68 jurors on the same day as juries in three other cases involving similar drug arrests were selected. The procedure involved in the impaneling and selection of the jury is not challenged. What is challenged is the fact that eight members of the jury which convicted the defendant were members of the juries in the other three cases, four of the jurors being members of two of the prior drug related cases. In each of these drug related cases, the testimony of Kim Kasabuske was effective. Kasabuske was the central figure in the procurement of evidence and charging of each of the defendants and his credibility as a witness was crucial to a finding of guilt or innocence.

Defense counsel attempted via *voir dire* to question several jurors concerning the effect of repeated contact with the state's star witness in those trials prior in time to the one in question. Each juror questioned responded affirmatively to his ability to determine the credibility of the witness on an individual trial-by-trial basis. The fact that one of the previous trials resulted in an acquittal may in fact be proof of that fact.

The defendant is asking this court to infer prejudice on the part of the jurors because of their previous exposure to similar cases and identical witnesses. However, the courts have generally held that a juror's prejudice must be proved, not merely implied, in situations

indistinguishable from the present case. *United States v. Haynes* (2d Cir. 1968), 398 Fed. 2d 980; *Casias v. United States* (10th Cir. 1963), 315 Fed. 2d 614.

". . . If the mere opportunity for prejudice or corruption is to raise a presumption that they exist, it will be hard to maintain a jury trial under the conditions of the present day." *Holt v. United States* (1910), 218 U. S. 245, 251, 31 Sup. Ct. 2, 54 L. Ed. 1021.

If, on the other hand, defense counsel had shown actual prejudice or bias a different result would be reached.

Thus, on the basis that the court will not imply prejudice under such a situation and that actual bias or prejudice has not been shown, we find no error in such procedure. However, we deem it to be the better practice to avoid such procedure. While the procedure complained of in no way destroys the impartiality of the jury, any procedure which unnecessarily brings into question the impartiality of the jury should be avoided.

*By the Court.*—Judgment and order affirmed.