STATE of Wisconsin, Plaintiff-Respondent,†

v.

Judith L. KIERNAN, Defendant-Appellant.

Court of Appeals

*No. 97–2449–CR. Submitted on briefs January 6, 1998.—Decided July 22, 1998.*

(Also reported in 584 N.W.2d 203.)

†Petition to review granted.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Rebecca Lyman Persick, Law Offices of Barry S. Cohen, S.C.* of Elkhart Lake.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Robert J. Wells, Jr.,* dis-

trict attorney and *James A. Haasch,* assistant district attorney.

Before Brown, Nettesheim and Anderson, JJ.

ANDERSON, J. The notion that a criminal defendant is entitled to a fair trial before an impartial jury is the cornerstone of the Due Process Clause of the Fourteenth Amendment. Because we conclude Judith L. Kiernan was denied her fundamental due process rights when the trial court refused to strike for cause five jurors who had earlier rejected the identical theory of defense to be employed by her, we reverse.

Kiernan entered a not guilty plea and requested a jury trial on charges of operating a motor vehicle while intoxicated, third offense, in violation of §§ 346.63(1)(a) and 346.65(2)(c), STATS., and operating a motor vehicle with a prohibited blood alcohol concentration, third offense, contrary to §§ 346.63(1)(b) and 346.65(2)(c). On the surface, the jury selection process complied with the requirements of ch. 756, STATS., and §§ 972.03 and 972.04, STATS. Twenty-five of the twenty-seven jurors summoned for jury duty appeared. Using a computer-generated random list, twenty jurors were called for voir dire. After replacing one potential juror excused for cause, Kiernan and the State exercised four peremptory challenges each to secure a twelve-person jury.

However, prior to jury selection, trial counsel for Kiernan entered an objection to the array of the jury. The trial court put the objection aside until the completion of jury selection. Once the jury was sworn, it was excused and a record was made of Kiernan's objection. The thrust of the objection was that the trial court erred in not excusing five jurors called for voir dire who

had served on a six-person jury two days earlier. The earlier trial was a first offense drunk driving case before the same judge and defended by the same attorney. Counsel pointed out that the defense theory in the earlier trial was that "residual mouth alcohol is a problem for the Intoxilyzer 5000" and he planned to use the same defense on behalf of Kiernan.[1]

Counsel was troubled by the responses from four of the five veteran jurors during voir dire:

> [F]our jurors indicated that unless I can prove to them that the person who operated the machine was a boob, or the machine didn't have all kinds of bells and whistles going off that it was malfunctioning, ergo, it does not pass its own diagnostic check,

[1] Residual mouth alcohol can contribute to elevated blood alcohol test results from the Intoxilyzer 5000 and similar devices that analyze blood alcohol from a breath sample. *See State v. Hanson,* 528 P.2d 100, 102 (Or. Ct. App. 1974); E. John Wherry, Jr., *The Rush to Convict DWI Offenders: The Unintended Unconstitutional Consequences,* 19 U. DAYTON L. REV. 429, 470 (1994).

In the earlier case, the officers involved testified that residual mouth alcohol can cause the Intoxilyzer 5000 to read artificially high. They also testified that items in the mouth—chewing gum, chewing tobacco, pennies—cause mouth alcohol to be retained longer than twenty minutes. And they testified that the twenty-minute observation period cannot begin until all items are removed from the mouth. From this evidence, Kiernan's counsel argued that it was logical to conclude that dentures could trap mouth alcohol and denture adhesive acted the same as chewing gum or tobacco. He planned to elicit identical evidence and make an identical argument during Kiernan's trial.

they are going to vote guilty on the prohibited alcohol concentration . . . .[2]

And he described the problem that this created:

That leaves me any [sic] the unenviable position of having to strike those jurors who I know will reject my defense today, and retain those jurors who I would otherwise strike if this were an untainted jury pool.

Counsel also made a record specifying the two potential jurors he would have struck if he had not been forced to use the four peremptory strikes to remove four of the five veteran jurors from the earlier trial. One individual had a close relative who had been injured by a drunk driver and the other was a social worker who knew several police officers.

Finally, counsel argued that the court's refusal to remove those five jurors from the jury pool summoned for the trial was unfair to Kiernan:

Miss Kiernan is the one that suffers. Because now we have twelve jurors who were the product of the Hobson's choice that I was presented with of leaving those jurors on, knowing that they were going to convict her on the prohibited alcohol concentration charge, and those jurors that I would have typically used my strikes for.

The assistant district attorney was not surprised by defense counsel's apprehension about having the same jurors on successive panels. He questioned the fundamental fairness of Sheboygan county's new jury system. He explained that he did not believe the jurors

---

[2] Unfortunately, voir dire was not reported and transcribed; nevertheless, neither the court nor the prosecutor corrected defense counsel's summary of the four veteran jurors' answers to his questions.

131

could disregard what went on in the earlier trial even if given a limiting instruction. The prosecutor expressed his concern that the veteran jurors would hear the exact same defense used two days earlier.

The trial court denied Kiernan's motion. The court explained that Sheboygan county had adopted a "lawful system" that is similar to the jury management system used in other counties that select jurors to serve for four weeks.[3] It noted that Kiernan's counsel had not presented any evidence that the jury management system was unlawful or that it unfairly discriminated by the exclusion or inclusion of certain groups or individuals. The court acknowledged that there had been complaints about the jury management system from other sources "and, I think in part, the complaints may have some justification."

However, according to the court, those complaints "really overlook the ability of our jurors. I put a lot of faith in the jury system, because I put a lot of faith in the ability of people to do the right thing." The court concluded that the jury that was ultimately selected and sworn could be fair and objective, that the jury selection process was not unfair and that it did not "unnecessarily cause defense counsel to have to strike this person or that person."

The jury returned guilty verdicts on both counts. Kiernan appeals from the judgment of conviction on

---

[3] On July 1, 1997, Wisconsin's jury management statutes were amended to allow counties to elect either a "One Day or One Trial" length of service, *see* § 756.28(1), STATS., or thirty-one days of consecutive service in any four-year period, *see* § 756.28 (2). Sheboygan county has opted for the latter. This appeal is neither a challenge to Sheboygan county's selection of the length of juror service nor is it a challenge to the modification of Wisconsin's jury management statutes.

the charge of operating while intoxicated, third offense. On appeal, Kiernan challenges the court's denial of her motion to strike the five veteran jurors. She argues that the court's actions violated her constitutional and statutory rights to a fair and impartial jury. She asserts that the court erroneously exercised its discretion in refusing to strike the five veteran jurors and this created the appearance of bias and prejudice. She contends that the five veteran jurors had the potential for unconscious bias and that from their voir dire responses that they would accept the Intoxilyzer 5000 as operating properly, it would be reasonable to infer that they had a bias against her theory of defense.

The State's response focuses on the jury that was ultimately selected. The State insists that Kiernan is not entitled to a perfect jury. It maintains that Kiernan failed to produce any evidence that the jury which rendered the verdicts was anything less than fair and impartial. Although the State also expresses some concern over the fact that five of the potential jurors had previous jury experience in a similar case, "the State firmly believes that the jury was impartial and the Trial Court was untainted by any erroneous exercise of discretion."[4]

██

We are required to decide if prior jury service during which jurors rejected a theory of defense creates bias in subsequent cases where the same theory of defense is to be used. Whether the trial court arbitrarily forced Kiernan to use her peremptory challenges and thereby deprived her of a statutory guarantee turns on whether the five veteran jurors' bias is "manifest."

---

[4] The Attorney General declined an invitation to submit a supplemental brief.

It is a well-settled principle of law in this state that a determination by a circuit court that a prospective juror can be impartial should be overturned only where the prospective juror's bias is "manifest."

*State v. Ferron*, 219 Wis. 2d 481, 579 N.W.2d 654, 660 (1998).

■The Wisconsin Supreme Court has recently clarified the standard of review that appellate courts must employ upon review of a circuit court's determination that a prospective juror can be impartial:

> Accordingly, we hold that a prospective juror's bias is "manifest" whenever a review of the record: (1) does not support a finding that the prospective juror is a reasonable person who is sincerely willing to put aside an opinion or prior knowledge; or (2) does not support a finding that a reasonable person in the juror's position could set aside the opinion or prior knowledge.
>
> Adopting this approach serves two purposes. With a focus on prospective jurors' subjective willingness to set aside their biases, the first prong of this approach accounts for the circuit court's superior position to assess the demeanor and disposition of prospective jurors. The second prong allows the appellate courts to determine whether under the particular circumstances surrounding the voir dire examination, no reasonable juror could put aside the bias or opinion which is revealed by the record.

*Id.* at 498, 579 N.W.2d at 661.

Without a transcript of the voir dire, we are unable to focus on the jurors' subjective willingness to put aside what they learned in the earlier trial. We are unable to review the dialogue between the attorneys, the court and the potential jurors. We are also in the

dark as to the trial court's conclusions concerning the prospective jurors' attitude, demeanor and disposition during voir dire. *See id.* at 497, 579 N.W.2d at 660. In denying Kiernan's motion, the court expressed its faith in the jurors in Sheboygan county. However, the court did not assess the impartiality of the five veteran jurors. *See id.* at 497–98, 579 N.W.2d at 660–61.

We are restricted in our analysis to the second prong of the test of whether a juror's bias is manifest. We must resolve whether under the particular circumstances surrounding the voir dire examination—the presence of five jurors who had previously heard and rejected a similar defense several days earlier—no reasonable juror could put aside what he or she had learned and assess Kiernan's defense fairly and impartially. *See id.*

Whether the trial court should have dismissed a potential juror for cause is a question of the proper exercise of the trial court's discretion. *See id.* To find an erroneous exercise of discretion, we must find either that the trial court has not exercised discretion or that it has exercised discretion on the basis of an error of law. *See id.*

■

Kiernan first focuses on the jury that was empaneled and the two jurors she was not able to strike. Her argument is that the trial court's refusal to strike five jurors denied her the right to be tried by a fair and impartial jury guaranteed by the Sixth Amendment to the United States Constitution and Article I, § 7 of the Wisconsin Constitution. This argument ignores the fundamental proposition that "[a]s long as the jury was impartial, the fact that the defendant had to use a peremptory challenge to achieve the result" does not constitute a constitutional violation.

*State v. Ramos*, 211 Wis. 2d 12, 18, 564 N.W.2d 328, 331 (1997).

Nevertheless, Kiernan contends she was denied an impartial jury because two jurors remained after she had used all of her peremptory strikes and their relationships made them biased. Kiernan had the burden of convincing the court that it was more probable than not that these two individuals were biased. *See State v. Louis*, 156 Wis. 2d 470, 478, 457 N.W.2d 484, 488 (1990). Other than the argument that their relationships made them biased, Kiernan presented no evidence of actual or implied bias.

In fact, both individuals would have been qualified to serve. In *Louis*, the Wisconsin Supreme Court refused to per se disqualify law enforcement officers from jury panels reasoning that their occupation alone would not make them predisposed to convict defendants, *see id.* at 480, 457 N.W.2d at 488–89; therefore, the social worker who knew several police officers, without more evidence, could not be struck from the panel for bias.[5] Likewise, the second individual who had a close relative injured by a drunk driver still carries the presumption of impartiality. *See State v. Olson*, 179 Wis. 2d 715, 720, 508 N.W.2d 616, 618 (Ct. App. 1993) (juror's experience as the victim of a crime does not create an implied bias as a matter of law).

Kiernan's second argument is that she was forced to use all of her peremptory challenges to exclude four

---

[5] In addition, even if the law enforcement officers who the social worker knew were testifying, the juror's acquaintance with them would not be enough to disqualify that individual from service. *See State v. Zurfluh*, 134 Wis. 2d 436, 438, 397 N.W.2d 154, 155 (Ct. App. 1986).

of five objectionable jurors who had, in the earlier case, rejected the identical residual mouth alcohol defense she was planning to employ. Where a defendant is forced to use a peremptory challenge to remove a juror the trial court failed to remove for cause, the defendant has been denied the maximum number of peremptory challenges guaranteed by statute. *See Ramos*, 211 Wis. 2d at 16–17, 564 N.W.2d at 330–31. The statutorily mandated peremptory challenges are substantial rights; a defendant should not have to use a peremptory challenge to remove a juror who should have been removed for cause. *See id.* at 22, 564 N.W.2d at 333. In Wisconsin, even if a fair and impartial jury returned a verdict, a defendant who has been deprived of the right to freely exercise all of his or her statutorily guaranteed peremptory challenges is entitled to a reversal and a new trial. *See id.* at 23–24, 564 N.W.2d at 333.

Whether the trial court arbitrarily forced Kiernan to use her peremptory challenges, thus depriving her of what is guaranteed by the statute turns on whether the five veteran jurors were biased. We are required to decide if prior jury service during which jurors rejected a theory of defense creates bias in subsequent cases where the same theory of defense is to be used.

■■■■■

A juror's bias may be either actual or implied. Section 805.08(1), STATS., provides a challenge for cause if there is actual bias, provides a challenge for cause if there is implied bias, and provides for automatic disqualification. *See Ferron*, 219 Wis. 2d at 499, 579 N.W.2d at 661. "Bias may be inferred from surrounding facts and circumstances." *State v. Wyss*, 124 Wis. 2d 681, 730, 370 N.W.2d 745, 768 (1985), *overruled on other grounds by State v. Poellinger,* 153 Wis. 2d 493, 506, 451 N.W.2d 752, 757 (1990). Whether a juror's

partiality may be presumed from the circumstances is a question of law. *See Hunley v. Godinez*, 975 F.2d 316, 318 (7th Cir. 1992).

The Wisconsin Supreme Court has addressed juror bias:

> A criminal defendant is guaranteed the right to a trial by an impartial jury by Article I, Section 7 of the Wisconsin Constitution and the Sixth Amendment of the United States Constitution, as well as principles of due process. Prospective jurors are presumed impartial, and the challenger to that presumption bears the burden of proving bias. Bias may be either implied as a matter of law or actual in fact. Even the appearance of bias should be avoided.

*Louis,* 156 Wis. 2d at 478, 457 N.W.2d at 487–88 (footnotes omitted; citations omitted). And in *State v. Gesch,* 167 Wis. 2d 660, 670, 482 N.W.2d 99, 103 (1992), the court quoted from *Peters v. Kiff,* 407 U.S. 493, 502 (1972): "[E]ven if there is no showing of actual bias in the tribunal, this Court has held that due process is denied by circumstances that create the likelihood or the appearance of bias."

The due process rights of a criminal defendant include "the right to a fair opportunity to defend against the State's accusations." *State v. Evans*, 187 Wis. 2d 66, 82, 522 N.W.2d 554, 560 (Ct. App. 1994) (quoted source omitted). A criminal defendant must be afforded the meaningful opportunity to present a complete defense. *See State v. Heft*, 185 Wis. 2d 288, 302–03, 517 N.W.2d 494, 501 (1994). The Due Process Clause of the Fourteenth Amendment requires a fair trial in a fair tribunal. *See In re Murchison*, 349 U.S.

133, 136 (1955). "[A]n impartial jury trial is basic to due process of law. It 'stands guardian over all other rights.' " *Casias v. United States*, 315 F.2d 614, 620 (10th Cir. 1963) (Murrah, C.J., dissenting) (quoted source omitted). When jurors have previously rejected a criminal defendant's proferred theory of defense and have affirmed during voir dire that they will again reject that theory of defense, the defendant has been denied a fair and impartial tribunal.

The veteran jurors' concession to Kiernan's counsel that they would find the Intoxilyzer 5000 to be accurate unless it failed its diagnostic tests or was operated by a noncertified technician evidences bias against the theory that residual mouth alcohol could cause an artificially high reading. The veteran jurors' expressed disposition to disbelieve the defense theory, in this case, does not square with prevailing notions of fundamental fairness. *See Heft*, 185 Wis. 2d at 303, 517 N.W.2d at 501.

The trial court erred when it failed to honor Kiernan's motion to strike the five veteran jurors for cause. Being forced to use her peremptory challenges to remove four of the five veteran jurors deprived her of the right to exercise her statutory complement of peremptory challenges. *See Ramos*, 211 Wis. 2d at 23, 564 N.W.2d at 333. Kiernan is entitled to a reversal of her conviction because she used her peremptory challenges to correct trial court error. *See id.* at 24–25, 564 N.W.2d at 334.

In a case arising out of LaCrosse county, the supreme court was faced with a claim that the jury's previous contact with similar cases and identical witnesses violated the defendant's right to an impartial jury and due process. *See State v. Boutch*, 60 Wis. 2d

397, 403, 210 N.W.2d 751, 754 (1973). In *Boutch*, the defendant arranged for the sale of methamphetamine from a bartender to Kim Kasabuske, a state agent. *See id.* at 399–400, 210 N.W.2d at 752–53. Boutch was charged with aiding and abetting the sale of dangerous drugs. Boutch's jury was selected on the same day from the same panel of sixty-eight jurors used to select three other juries. *See id.* at 403, 210 N.W.2d at 754. Boutch's trial was the last of the four trials, and eight jurors had served on all three earlier trials and four jurors had served on two of the earlier trials. *See id.* In each of the trials, Kasabuske was the State's primary witness; he had procured drugs from each of the defendants and his credibility was crucial to a finding of guilt or innocence. *See id.* During voir dire several of the jurors assured Boutch's counsel that they could determine Kasabuske's credibility on a case-by-case basis. *See id.* The supreme court noted that the fact that one of the trials had ended in an acquittal was proof of the jurors' abilities. *See id.* On appeal, Boutch argued that the court should have inferred that the jurors were prejudiced because of their experience in the earlier trials. *See id.* The supreme court declined to presume bias or prejudice on the part of the jurors simply because they had been required to determine Kasabuske's credibility in prior trials. *See id.* at 403–04, 210 N.W.2d at 754–55.[6]

---

[6] In *French v. State*, 85 Wis. 400, 55 N.W. 566 (1893), *overruled in part by Boehm v. State,* 190 Wis. 609, 209 N.W. 730 (1926), the defendant entered a not guilty plea to the charge of murder and imposed an insanity defense. Under the statutory procedure in effect, a jury was impaneled to hear and consider the evidence on the special issue of insanity. If the jury failed to reach a unanimous verdict, the statute provided that the issue of insanity would be tried along with the not guilty plea before a

*Boutch* is readily distinguishable from this case. In *Boutch*, the veteran jurors were exposed to the same central witness and had to judge his credibility. Here, the veteran jurors were exposed to the identical theory of defense that was not dependent upon the credibility of the same witness. In *Boutch*, the jurors gave assurances during voir dire that they would determine the witness' credibility on a case-by-case basis. Here, the exchanges between Kiernan's counsel and the court lead to the conclusion that none of the veteran jurors were able to give unequivocal assurances that they

---

jury. *See id.* at 406, 55 N.W. at 567. The jury was unable to decide if French was insane at the time of the murder and the judge ordered the same jury to hear the not guilty plea and the insanity defense. The supreme court held that the actions of the trial judge were "grave error." *See id.* The supreme court was concerned because the jurors had heard all of the evidence and the arguments on the question of insanity and after deliberations were unable to agree. *See id.* "The very fact of their disagreement implies that they had all formed opinions on it, and that their opinions did not agree." *Id.* The supreme court stated that French was entitled to have his plea of not guilty heard by an impartial jury and ordering the same jury that deadlocked on the issue of insanity to hear that plea deprived him of that right. *See id.* at 407, 55 N.W. at 567.

> The accused is placed on trial for the crime. His insanity is a question material to the case. A jury is forced upon him to try his case, all of whom had formed and expressed an opinion on the question whether he was or was not insane when he killed the deceased. Does the law suffer or sanction such a biased, partial, and prejudiced jury for the trial of one charged with the crime of murder? Any one would say that this would be a judicial outrage upon the legal and constitutional rights of the accused. And yet this is just such a case. The accused has the right to demand that he be tried before a fair and impartial jury.

*Id.* at 407, 55 N.W. at 567–68.

would consider the theory of defense on a case-by-case basis.

Although there are numerous reported decisions discussing the *Boutch* issue of bias arising from interim jury service, there is a scarcity of decisions discussing the issue presented by this appeal.[7] In *Alvarez v. State*, 582 P.2d 816, 817 (N.M. 1978), the trial court rejected challenges for cause to seven jurors who had previously served in a drug trafficking case that relied upon the same witness who was scheduled to testify against Alvarez. In a decision that combines both the credibility of an identical witness and an identical theory of defense, the New Mexico Supreme Court held that a juror who has served in a prior criminal trial is disqualified from serving in a subsequent trial unless the trial court is satisfied that the testimony of the identical witness will be corroborated. *See id.* at 818.

The requirement of avoiding the appearance of juror bias obligates us to conclude that the trial court should have granted Kiernan's motion to strike the five

---

[7] Other jurisdictions are split on whether interim jury service disqualifies a juror for cause: *State v. Rummel*, 326 N.W.2d 64, 67 (N.D. 1982), held that prior service could disqualify jurors; however, in *Kirkland v. State*, 786 S.W.2d 557, 561 (Tex. App. Ct. 1990), it was concluded that prior service in similar cases was not grounds to disqualify a juror. Other state decisions are collected in Annotation, *Competency of Juror as Affected by His Participation in a Case of Similar Character, but not Involving the Party Making the Objection*, 160 A.L.R. 753 (1946). Federal cases are collected in Martin I. Greenblatt, Annotation, *Effect Upon Accused's Sixth Amendment Right to Impartial Jury of Jurors Having Served on Jury Hearing Matter Arising Out of Same Transaction or Series of Transactions*, 68 A.L.R. FED. 919 (1984).

veteran jurors for cause.[8] In *Casias*, 315 F.2d at 614, an equally divided *en banc* court affirmed a drug conviction where the defendant contended he was deprived of an impartial jury because of prior service in a similar case by some members of his jury. In a persuasive dissent, three judges pointed out that there was nothing new or novel in disqualifying jurors for policy reasons. *See Casias*, 315 F.2d at 620. They contended that disqualification for bias was a constitutional safeguard of an impartial jury. *See id.*

> Commenting upon the right to challenge for 'suspicion of partiality,' Chief Justice Marshall stated that, 'The relationship may be remote; the person may never have seen the party; he may declare that he feels no prejudice in the case; and yet the law cautiously incapacitates him from service on the jury because it suspects prejudice, because in general persons in a similar situation would feel prejudice.' More recently the principle has been reaffirmed in the language of Justice Frankfurter who said that, 'The reason for disqualifying a whole class on the ground of bias is the law's recognition that if the circumstances of that class in the run of instances are likely to generate bias, consciously or unconsciously, it would be a hopeless endeavor to search out the impact of these circumstances on the mind and judgment of a particular

---

[8] We are fully aware that the constitutional concepts embodied in this decision may cause administrative problems in jury management for those counties that have opted for thirty-one days of consecutive service in a four-year period. The problem should be ameliorated by the realization that it will be a rare trial where the confluence of events results in jurors who have previously rejected an identical defense theory being called for service in a second trial.

individual. The appearance of impartiality is an essential manifestation of its reality.'

*Id.* (quoted source omitted; citation omitted). Finally, the dissent reprised the observation of Justice Holmes, "Any judge who has sat with juries knows that in spite of forms they are extremely likely to be impregnated by the environing atmosphere." *Id.* (quoted source omitted).

In sum, we conclude that it is error to force a defendant to use his or her peremptory challenges when it has been established that: (1) one or more potential jurors have previous jury experience; (2) during their previous service the veteran jurors rejected an identical theory of defense the defendant intends to rely upon; (3) the credibility of witnesses is not crucial to the theory of defense; *and* (4) during voir dire the veteran jurors have stated that they will not give serious consideration to the theory of defense. This conclusion protects a defendant's due process rights to be tried by a fair and impartial tribunal and to mount an adequate defense against the State's accusations.

*By the Court.*—Judgment reversed.