STATE OF NEBRASKA, APPELLEE, v. JOHN L. McCOWN, APPELLANT.

203 N. W. 2d 445

Filed January 12, 1973. No. 38567.

Dalke, Carlson & Thompson, for appellant.

Clarence A. H. Meyer, Attorney General, and Chauncey C. Sheldon, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

SPENCER, J.

Appellant, John L. McCown, was convicted of the crime of burglary and sentenced to a term of not less than 18 months nor more than 3 years in the Nebraska Penal and Correctional Complex. We affirm.

McCown was charged was burglarizing the Beatrice Hide Company. He was implicated, along with Spiv Salts, by one Harold Haynes who had confessed to the burglary. The articles taken included several new steel traps, some of which were found at the McCown residence.

The burglary occurred sometime subsequent to June 4, 1971, and prior to June 11. Harold Haynes confessed on July 23, 1971. That same day Captain Luckeroth of the Beatrice police department secured a search warrant based upon an affidavit alleging substantially the information given him by Haynes. McCown had stayed behind in his automobile while the other two broke into the building. When they returned to the car they told McCown that there were some animal traps in the building. At his request they returned to the building and got the traps. They then went to the McCown home,

where they divided the loot. Appellant took most of the traps. Before Captain Luckeroth made the affidavit, he had identified the McCown house and car. Affiant personally checked to determine that the identified car was registered to McCown. Based on the affidavit and Luckeroth's sworn testimony, the county judge issued a warrant authorizing the search of appellant's premises as well as his automobile.

Appellant's home, car, and garage were searched pursuant to the warrant. The officers found traps, some new and some old, in the garage. They seized approximately 40 of the new traps. An inventory was made in the presence of Mrs. McCown, and a copy was left with her. As the officers were driving away they observed appellant walking down the street and immediately arrested him. Another inventory was made at the jail while the appellant was apparently locked in a cell in another area. Later that same day the police found a witness, Eugene Thornburg, who stated that he could identify some traps which he had sold to appellant earlier in the year. The witness was taken to the McCown residence. The officer spoke with Mrs. McCown, telling her the witness was there to see if any of the traps remaining in the garage were some that he had given to the appellant. The officer did not have the search warrant with him, but no traps were seized on this visit.

At the hearing on September 16, 1971, the affidavit on which the search warrant had been based was identified by the deputy clerk of the district court. She testified it had been filed in her office that same day by the secretary for the county judge. The warrant with the return and the inventory had been filed in the district court on July 26, 1971. Appellant moved to quash the search warrant and to suppress the evidence seized pursuant to it. This motion was denied.

When the prosecution called Haynes he refused to testify on the ground that his testimony might incriminate him. The State moved to grant Haynes immunity

from prosecution and require him to testify. The court took judicial notice of the action pending in the same court, charging Haynes with breaking and entering, and sustained the motion. Haynes' testimony fully supports and elaborates upon the information contained in the affidavit for the search warrant.

On July 23, 1971, during the course of the investigation, a statement was taped by Haynes and later reduced to writing. During Haynes' testimony, the appellant moved for its production for examination by appellant's counsel. He requested a 10-minute recess to examine the statement for impeachment purposes. The court recessed the proceedings and then denied the motion for a recess.

The traps stolen from the Beatrice Hide Company were new, still in boxes, unused, and not rusty. Appellant, who was a trapper, testified that he had obtained the traps from Eugene Thornburg in February of 1971; that the traps taken from his garage were fairly new but had been used; and that by looking at a trap it was not possible to tell whether it was new or used if it had been properly cared for. Captain Luckeroth was allowed to testify over objection that the traps seized had never been used.

After the jury had retired for deliberation, the following inquiry was received from the jury: "1. What was the testimony of John McCown as to the condition of the traps in plaintiff's Exhibit #5. (new or used?) 2. What was the testimony of Willard Bittings as to the condition of the traps in plaintiff's Exhibit #5. (new or used?) 3. What was the testimony of Donald Luckeroth's as to the condition of the traps in plaintiff's Ex. #5. (new or used?) Larry J. Hasenkamp." After a long conference with the attorneys, the court indicated the portions of the testimony that would be ordered read to the jury. Appellant had no objection to the portion to be read, but did request the addition of certain testimony of his own which he felt should be

read to help explain the questions asked.

In reading the testimony of Bitting, the court reporter included the testimony that the traps "are practically new." This portion of his testimony had been stricken and the court reporter omitted to show the objection, the motion to strike, or the ruling. In reading the testimony of Captain Luckeroth the court reporter inadvertently commenced reading at a point that was prior to the point agreed to in chambers. He read a question asking Luckeroth if he had an opinion as to whether the traps had been used. Luckeroth answered "Yes." The next question was: "And what is that opinion?" An objection to that question was sustained on the ground that insufficient foundation had been laid. Two further foundational questions were asked and answered and then Luckeroth's opinion that the traps had not been used was admitted over the appellant's objection.

Appellant's first assignment of error involves the validity of the search and seizure because of certain alleged variances from statutory procedure. Section 29-816, R. R. S. 1943, requires that "all other papers" in connection with the issuance of a search warrant shall be filed with the clerk of the district court for the county in which the property was seized. Section 29-812, R. R. S. 1943, requires that any court issuing a search warrant shall receive a fee of $2 for the services connected therewith, including the taking of necessary acknowledgments and the filing of the return.

The search warrant was issued July 23, 1971. The return and inventory were filed in the district court for Gage county on July 26, 1971. The affidavit, however, was not filed until September 16, 1971. Appellant contends this late filing invalidates the search warrant. Section 29-814, R. R. S. 1943, reads in part: "A warrant shall issue only on affidavit sworn to before the judge or magistrate and establishing the grounds for issuing the warrant. If the judge or magistrate is

satisfied that grounds for the application exist or that there is probable cause to believe that they exist, he shall issue a warrant identifying the property to be seized and naming or describing the person or place to be searched."

Appellant also attempts to void the warrant because the magistrate issuing it took sworn testimony and failed to charge the statutory fee for issuing the warrant. The sworn testimony before the magistrate is not recorded so we have no record of it. There is little doubt, however, that the affidavit standing alone shows probable cause for the issuance of the warrant. The failure of the magistrate to collect the $2 fee does not affect the validity of the warrant. Whether the magistrate may be held accountable for the fee when it is not collected is not involved herein.

The issue presented is whether or not the failure to comply strictly with post service statutory proceedings will invalidate a search conducted pursuant to an otherwise valid warrant in the absence of a clear showing of prejudice. We hold it will not. The return and filing of a search warrant is a ministerial act and any failure therein does not void the warrant. See Evans v. United States, 242 F. 2d 534 (6th Cir., 1957), certiorari denied 353 U. S. 976. There has been no showing of prejudice herein.

Appellant further argues that the last search was invalid because the warrant once served was fully executed and had no further life. Nothing was seized on this search. Further, the witness who accompanied the officer gave no testimony respecting his examination of the traps at the McCown garage. The State argues it was a continuation of the initial search and not an independent search requiring an additional warrant. We find this search did not prejudice appellant's rights. There is no way it could have invalidated the initial search and seizure.

Appellant asserts that section 29-2011.01, R. S. Supp.,

1972, is unconstitutional in that it violates equal protection rights of the appellant. The statute provides whenever any person refuses to testify in a criminal prosecution for the reason that the testimony may tend to incriminate him, he may be compelled to do so by order of the court. When he does so he is granted transactional immunity. Appellant urges that this statute gives the prosecution an advantage over the defense because he does not have a similar right. This he contends is tantamount to a denial of the equal protection of the laws. There is no merit to appellant's contention.

Mr. Justice Powell, writing for the majority in Kastigar v. United States (1972), 40 L. W. 4550, 406 U. S. 441, 92 S. Ct. 1653, 32 L. Ed. 2d 212, said: "The power of government to compel persons to testify in court or before grand juries and other governmental agencies is firmly established in Anglo-American jurisprudence. The power with respect to courts was established by statute in England as early as 1562, and Lord Bacon observed in 1612 that all subjects owed the King their 'knowledge and discovery.' * * * The first Congress recognized the testimonial duty in the Judiciary Act of 1789, which provided for compulsory attendance of witnesses in the federal courts. MR. JUSTICE WHITE noted the importance of this essential power of government in his concurring opinion in Murphy v. Waterfront Comm'n, 378 U. S. 52, 93-94 (1964):

" 'Among the necessary and most important of the powers of the States as well as the Federal Government to assure the effective functioning of government in an ordered society is the broad power to compel residents to testify in court or before grand juries or agencies. See Blair v. United States, 250 U. S. 273. Such testimony constitutes one of the Government's primary sources of information.' "

The United States Supreme Court has on several occasions characterized immunity statutes as essential to

the effective enforcement of various criminal statutes. As Mr. Justice Frankfurter observed, speaking for the Court in Ullmann v. United States (1956), 350 U. S. 422, 76 S. Ct. 497, 100 L. Ed. 511, such statutes have "become part of our constitutional fabric * * *."

History has demonstrated that immunity statutes are essentially necessary for the investigation of many offenses. Without them it would be practically impossible to enforce some of our criminal statutes. Immunity statutes are intended for those offenses where the only persons capable of giving useful testimony are those implicated in the crime. Immunity has historically been a governmental investigative tool for offenses which could not be investigated or proved otherwise. It is solely a governmental prerogative. Appellant is in no different position than any other individual charged with a crime. It seems elemental that equal protection of laws is applicable only as between persons or citizens, natural or artificial.

Appellant next assigns as error the denial of his counsel's request for a recess in order to examine a statement made by his accomplice, Haynes, for impeachment purposes. Section 29-1912, R. S. Supp., 1972, is a comprehensive statute for discovery in criminal matters. The name of the witness Haynes was endorsed on the information so that McCown knew Haynes was to be a witness against him. He had ample notice and opportunity to obtain the requested information previous to the trial. A request made during the trial is addressed to the sound discretion of the trial court. While we believe the request should have been granted, we do not consider it an abuse of discretion. We cannot see how McCown on the record could have been prejudiced by its refusal.

Appellant urges the trial court committed prejudicial error in giving an additional instruction to the jury after the jury had begun its deliberations. He refers to the reading of testimony to the jury in excess of

the testimony the court reporter had been instructed to read, and the inclusion of testimony which had been stricken from the record. The practice of reading portions of the evidence to the jurors after they have been deliberating, while sanctioned by the statute, is fraught with some danger. Barton v. Shull (1903), 70 Neb. 324, 97 N. W. 292. Here, the court conferred with attorneys for approximately 2 hours before the testimony was read to the jury. Appellant had no objection at that time to the testimony to be read.

The question we need to consider is whether or not the additional testimony read could have been prejudicial to the defendant. Appellant made no objection to the reading of the stricken testimony. He explains this by saying he did not realize at the time the court reporter read such testimony in the judge's chambers that such testimony had been stricken after objection. We are unable to see any way McCown could have been prejudiced by this testimony.

Appellant also urges that if the court was determined to give a further instruction to the jury by having the court reporter read certain portions of the testimony to the jury, it was prejudicial error not to honor his request to have certain portions of his own testimony germane to the request also read to the jury. The court properly denied this request "for the reason that the testimony does not directly relate to the condition of the traps on Exhibit No. 5 of the plaintiff, and in the opinion of the court is not a proper segment of testimony as requested by the questions submitted by the jury."

Appellant's next assignment of error relates to allowing Captain Luckeroth to testify that in his opinion the traps on plaintiff's exhibit No. 5 never had been used. The witness had engaged in the occupation of trapping for a period of 7 or 8 years in Pawnee county and the surrounding area. He was familiar with both new and used traps and had purchased and used traps of the same type as those involved. Even though the

question was phrased in a form calling for an opinion, in reality the answer did not express an opinion of the type which traditionally has been considered an improper invasion of the fact-finding province of the jury. The witness was testifying from his general experience with animal traps. As to whether the traps were new or used is a matter readily ascertainable by any person with ordinary powers of observation. It is not necessarily a subject requiring expert testimony. As stated in Frazier v. Anderson (1943), 143 Neb. 905, 11 N. W. 2d 764: " 'Where an inference is so usual, natural, or instinctive as to accord with general experience, its statement is received as substantially one of a fact— part of the common stock of knowledge.' "

Appellant, on cross-examination of Captain Luckeroth, adduced the following testimony: "Q Referring to plaintiff's Exhibit No. 6, do you have an opinion as to whether or not those traps have been used? A Yes. Q Have they been used? A No." Here, McCown's counsel was eliciting a similar opinion from the witness. Additionally, appellant's counsel asked the witness Bitting whether one of the traps looked "like it's been used." Even if the testimony were considered as opinion evidence, McCown could not have been prejudiced by it.

Appellant next complains of the misconduct of the prosecuting attorney called as a defense witness. The county attorney testified that as a result of the alleged burglary in this matter, he had filed a complaint against Spiv Salts but dismissed the case before filing an information. On cross-examination the county attorney asked himself: "* * * why did you dismiss the charge against Mr. Spiv Salts in the County Court * * *?" His answer was: "That none of these stolen items were found in his possession and testimony from an accomplice is not enough under the law of the State of Nebraska to get a conviction." Appellant contends this was misconduct on the part of the county attorney be-

cause later testimony developed that Harold Haynes' wife was present when he brought the guns and traps into the house. We infer that what the county attorney was saying was that since the only evidence he had against Salts would have been that of Haynes and his wife, he doubted that he could obtain a conviction. Whether this is true or not, we fail to see how the statement could have prejudiced McCown.

Appellant next contends that his sentence was excessive. He received a term of not less than 18 months nor more than 3 years. The penalty for burglary ranges from 1 to 10 years. § 28-532, R. R. S. 1943. There is nothing in the record to show the sentence was not a legitimate exercise of the court's judicial discretion. On the record, we must assume he considered the nature and circumstances of the crime and the history, character, and condition of the offender.

Appellant's last assignment of error is that although no one of the several errors assigned is in itself sufficient to warrant a reversal, all of them in the aggregate establish that the defendant did not have a fair trial. It would be unusual to have a perfect trial or one absolutely free of error. While it is possible so many nonprejudicial errors may creep into a trial in the aggregate they deprive a defendant of a fair trial, this case is not one of them. On the record, the appellant had a fair trial. The jury found him guilty and his conviction should be affirmed.

AFFIRMED.

Note: Dissenting opinion appears *post* p. 576, 204 N. W. 2d 85.