HEBEL, Plaintiff in error, V. STATE, Defendant in error.

*No. State 131. Argued September 4, 1973.—Decided October 2, 1973.*
(Also reported in 210 N. W. 2d 695.)

For the plaintiff in error there were briefs and oral argument by *Howard B. Eisenberg,* state public defender.

For the defendant in error the cause was argued by *Thomas J. Balistreri,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

HALLOWS, C. J. The facts are quite simple. It was alleged Hebel and several other men broke into a locked storage shed at a Rex Chainbelt construction site in the city of Waukesha on November 12, 1970, and were loading lumber and other property from the shed and the construction site onto a truck when the police arrived at the scene. The primary witness against Hebel was one of the men involved, who was granted immunity. He testified the men involved knew that a crime was being committed. Hebel testified he helped load lumber onto the truck but he believed he was working for his employer. He testified he did not enter the shed and that he did not understand or know he and the other men were taking the property without permission of the owner. The time of these acts was somewhere around 2 o'clock in the morning.

The crime of burglary consists of the intentional entry into a building without the consent of the owner with the intent to steal or commit a felony therein, sec. 943.10 (1) (a), Stats., and the crime of theft is the intentional taking and carrying away, using, transferring, concealing, or retaining possession of movable property

without the consent of its owner with the intent of depriving him permanently of the possession thereof. Sec. 943.20 (1) (a). Theft is not an included crime of burglary because it requires asportation and burglary does not. Thus Hebel was properly charged with and could have been convicted of both crimes without violating sec. 939.66. *Raymond v. State* (1972), 55 Wis. 2d 482, 487, 198 N. W. 2d 351; *State v. Hall* (1972), 53 Wis. 2d 719, 720, 193 N. W. 2d 653; *Champlain v. State* (1972), 53 Wis. 2d 751, 755, 193 N. W. 2d 868; *Hawpetoss v. State* (1971), 52 Wis. 2d 71, 77, 187 N. W. 2d 823.

In his first argument Hebel contends his conviction for theft following his acquittal for burglary violates the constitutional prohibitions against double jeopardy. He bases his argument on the doctrine of collateral estoppel, but such argument has no merit for two reasons. First, Hebel claims the doctrine of collateral estoppel applies to the verdict because after the jury determined on the burglary charge he had no intent to steal, it could not consistently find that he had such an intent as was necessary to find him guilty on the theft charge. This argument presupposes the only issue before the jury on the burglary charge was the intent to steal. After examining the record which this court is bound to do when presented with the issue of collateral estoppel, *Ashe v. Swenson* (1970), 397 U. S. 436, 90 Sup. Ct. 1189, 25 L. Ed. 2d 469, we conclude the verdict of acquittal on the burglary charge could have been predicated on the finding Hebel did not enter the shed which he was accused of burglarizing. Consequently, the jury did not necessarily determine Hebel's intent and that issue is not foreclosed from consideration on the theft charge even if we assume the jury considered the burglary charge first.

Second, the doctrine of collateral estoppel has been recognized as an established principle of federal criminal law, at least since *United States v. Oppenheimer* (1916),

242 U. S. 85, 37 Sup. Ct. 68, 61 L. Ed. 161, and is considered to be a part of the fifth amendment's guaranty against double jeopardy. *Ashe v. Swenson, supra.* For the distinction between collateral estoppel and doctrine of res judicata, *see* Black's, *Law Dictionary* (4th ed.), *Estoppel.* The doctrine of collateral estoppel is a specific application of the doctrine of double jeopardy to a fact and it would seem logical that the fact issue decided must be part of the subject matter of a subsequent prosecution against the same individual for a different offense. This was the situation in *Ashe v. Swenson* and in *Turner v. Arkansas* (1972), 407 U. S. 366, 92 Sup. Ct. 2096, 32 L. Ed. 2d 798, relied on by Hebel. But Hebel argues the doctrine can be applied to a single trial involving two counts, relying on *Travers v. United States* (D. C. Cir. 1964), 335 Fed. 2d 698, and *United States v. Nash* (4th Cir. 1971), 447 Fed. 2d 1382; but neither of these cases sustains Hebel's contention. In *Travers* the court was talking about an issue which would be involved on the retrial of a second count—an issue upon which the defendant had been acquitted in the trial. *Nash* involved a second trial on a charge of perjury following a trial and an acquittal on a charge of mail theft, the credibility of the defendant having been determined in the first trial.

We are not inclined to extend the doctrine of collateral estoppel, based as it is on double jeopardy, to include an inconsistent verdict obtained in a single trial on a multicount information even though it may apply to a subsequent determination of an issue in the same lawsuit. If there is an inconsistent verdict in a multicount trial, it should be treated as inconsistent verdicts are treated, not as raising a question of double jeopardy. We find no support for Hebel's position in *Gates v. Paul* (1906), 127 Wis. 628, 107 N. W. 492. In *Gates* an interlocutory judgment disposing of certain issues and reserving others

was affirmed on appeal and held to be conclusive except as to those matters reserved. The prohibition against double jeopardy in the federal system is likewise directed only against successive trials. *Abbate v. United States* (1959), 359 U. S. 187, 79 Sup. Ct. 666, 3 L. Ed. 2d 729; *Green v. United States* (1957), 355 U. S. 184, 78 Sup. Ct. 221, 2 L. Ed. 2d 199; *United States v. Tinney* (3d Cir. 1973), 473 Fed. 2d 1085; *Ferguson v. Cardwell* (6th Cir. 1971), 452 Fed. 2d 1011.

The second assignment of error raises the question of whether the granting of immunity to one of the other men involved so the state would have direct testimony against Hebel was a violation of due process because immunity was not also granted to a witness Hebel wished to have testify on his behalf. This result would be secured either by requiring the court to grant immunity sua sponte or requiring the district attorney to make such a motion. The granting of immunity is regulated by sec. 972.08 (1), Stats., which legitimatizes the compulsion of testimony of a witness by the granting of immunity to him "by order of the court on motion of the district attorney." The granting of immunity by the court can only be done on motion by a district attorney, not by the court sua sponte. *Elam v. State* (1971), 50 Wis. 2d 383, 184 N. W. 2d 176; *State v. Blake* (1970), 46 Wis. 2d 386, 175 N. W. 2d 210. The public policy behind granting immunity is to obtain sufficient evidence for a conviction but not to grant immunity if sufficient evidence is otherwise available. This determination is made by the state. *State ex rel. Jackson v. Coffey* (1963), 18 Wis. 2d 529, 118 N. W. 2d 939. Hebel challenges the application of sec. 972.08 to his case because he is denied a corresponding right to obtain an order granting immunity to a defense witness who allegedly could give exculpatory evidence. Hebel argues that due process requires equality and that he have the same opportunity to obtain witnesses

for his defense through immunity as the prosecution has to obtain evidence for a conviction.

Traditionally, the granting of immunity has been for the benefit of the state and an accused cannot invoke the statutory provision to compel a witness to testify in his behalf. 98 C. J. S., *Witnesses,* p. 262, sec. 439; 22 C. J. S., *Criminal Law,* pp. 160, 161, sec. 46 (2). *See Kastigar v. United States* (1972), 406 U. S. 441, 92 Sup. Ct. 1653, 32 L. Ed. 2d 212, in which the court reviewed the historical foundation of immunity statutes and discusses their purpose and constitutional validity. It has been held that immunity statutes which provide government with the power to compel the testimony of a witness but do not afford a correlative right to the accused are not a denial of equal protection of the laws. *See State v. McCown* (1973), 189 Neb. 495, 203 N. W. 2d 445. Likewise, such immunity statutes do not constitute a denial of due process and in the absence of a policy of unfair and unequal law enforcement, the prosecution may select a codefendant or a coconspirator to whom immunity shall be given. *See People v. Williams* (1970), 11 Cal. App. 3d 1156, 90 Cal. Rptr. 409. But this unfair and unequal law enforcement relates to those to whom immunity could be granted, not to one who collaterally seeks immunity for a prospective witness. If Hebel were correct in his argument he would have a right to immunize all participants to the crime in return for exculpatory evidence. The result of such a doctrine in some cases would be to free all the participants but one. We see no reasonable relationship between the immunity power of the prosecutor and his duty not to conceal exculpatory evidence.

Hebel complains the trial court improperly limited defense counsel's recross-examination of the prosecution's primary witness as to his prior convictions, but this issue is not properly raised on appeal and therefore we will not consider it. It was alleged in at least three mo-

tions under sec. 974.06, Stats., and such motions do not normally reach procedural errors or an error in admission of evidence but are limited in scope to matters of jurisdiction or of constitutional dimensions. *Peterson v. State* (1972), 54 Wis. 2d 370, 381, 195 N. W. 2d 837; *see also: Weber v. State* (1973), 59 Wis. 2d 371, 377, 208 N. W. 2d 396; *State v. Langston* (1971), 53 Wis. 2d 228, 191 N. W. 2d 713. This error should have been raised by a motion for a new trial and appeal.

It is argued the admissibility of evidence of prior convictions for impeachment purposes under sec. 885.19, Stats., is subject to constitutional guaranties requiring due process of law and a fair trial. Language to that effect is found in *State v. Driscoll* (1972), 53 Wis. 2d 699, 193 N. W. 2d 851. But even if this were true and applied to this case, trial counsel made no objection to the limitation on his recross-examination of the prosecution's witness and no offer of proof was made. Consequently, the matter was waived. *State v. Hoffman* (1973), 58 Wis. 2d 21, 24, 205 N. W. 2d 386; *Deja v. State* (1969), 43 Wis. 2d 488, 492, 168 N. W. 2d 856. *See also: State v. Becker* (1971), 51 Wis. 2d 659, 667, 188 N. W. 2d 449.

The fourth assignment of error concerns the appointment of the city attorney of Delafield to represent Hebel at the trial and it is claimed this appointment is prohibited by the teaching of *Karlin v. State* (1970), 47 Wis. 2d 452, 177 N. W. 2d 318. In *Karlin* this court criticized the appointment of a part-time city attorney of Manitowoc at the defendant's request to represent a defendant in a criminal action in Manitowoc county court. We pointed out there was a possibility of conflict in that an assistant city attorney was obliged to work closely with city police officers and it might be impossible for him to adequately represent the defendant in a state prosecution when the same police officers might appear as witnesses and be subject to his cross-

examination. However, a potentiality of prejudice which does not materialize is normally insufficient to render counsel ineffective. This is an application of the harmless-error rule and an actual conflict should be demonstrated to entitle the defendant to relief. *See State v. Reppin* (1967), 35 Wis. 2d 377, 151 N. W. 2d 9, and *Witzel v. State* (1969), 45 Wis. 2d 295, 172 N. W. 2d 692.

While there may be, as we stated in *Karlin*, situations where the potential conflict and consequent prejudice is so great that an actual demonstration of prejudice need not be apparent in the record, we do not consider this case to be in that category. Hebel does not assert his defense counsel at trial performed ineffectively. He does not contend his counsel's cross-examination of the police officers who testified at the trial was listless or uninspired. Hebel requested the representation by the city attorney of the city of Delafield and the city attorney of Delafield would not have as much direct contact with the police of the city of Waukesha involved in this case as he would with police of the city of Delafield. While we think the trial judges ought not appoint attorneys who are in governmental service other than public defenders to represent defendants and the better policy is not to do so in order to avoid any possible contention of conflict or prejudice, this record does not require a reversal.

The last assignment of error is the trial court erred in failing to instruct the jury sua sponte on the lesser included crime of attempted theft. We do not reach the merits of this issue because trial counsel failed to request such an instruction at the trial and it is not error for the trial court to fail to give such an instruction sua sponte. *Champlain v. State* (1972), 53 Wis. 2d 751, 193 N. W. 2d 868. Trial counsel cannot sit back at trial and wait for the trial judge to make errors of omission. It is the duty of trial counsel to try his case.

*By the Court.*—Orders affirmed.