**Earl S. STUART, Jr., Petitioner,**

v.

**John R. GAGNON, Respondent.**

**No. 84–C–42.**

United States District Court,
E.D. Wisconsin.

July 17, 1985.

Steven P. Weiss, Asst. State Public Defender, Madison, Wis., for petitioner.

Jerome S. Schmidt, Asst. Atty. Gen., Madison, Wis., for respondent.

## DECISION AND ORDER

WARREN, District Judge.

This matter is before the Court on the petition of Earl S. Stuart, Jr., for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. Stuart contends that he was denied due process of law during his trial for armed robbery in 1980. Since the Court does not agree with the petitioner's claim that the actions of the district attorney and trial court deprived him of his right to a fair trial, the Court will deny his petition.

### I. Background

On the evening of October 14, 1979, three disguised, armed men robbed Lee's Drug Store in Glenwood City, Wisconsin. The owner of the pharmacy, Charles Rasmussen, did not recognize any of the robbers. Rasmussen's daughter identified one of the robbers, who had held a shotgun to her back during the episode, as being Robert Weed. LaDonna Christianson, a store employee, identified Richard Verduzco as the robber who carried the shotgun. Verduzco and Fred Weed, Robert Weed's younger brother, were identified by Roger Kelm, a customer who entered the store during the robbery. Like Christianson, Kelm believed that Verduzco was the man who wielded the shotgun during the robbery. Two other persons present during the robbery, Dr. Phil Limberg and Patricia Voeltz, were unable to identify any of the robbers. The robbers fled the scene after taking both money and drugs from the store.

On October 27, 1979, the petitioner was seen placing an object in the garbage dumpster behind a Burger King restaurant in Minneapolis, Minnesota. The police were called and retrieved the discarded object—a gun. Stuart admitted placing the gun in the dumpster but stated that he did so as a favor to Fred Weed.

Soon after the investigation into the drug store robbery had begun, Fred Weed agreed to cooperate with law enforcement officials in exchange for not being prosecuted for the robbery. Due to the information provided by Fred Weed, Robert Weed and the petitioner were charged with the robbery.

Thereafter, Robert Weed entered into a plea agreement with the District Attorney of St. Croix (Wisconsin) County, Eric J. Lundell, in exchange for a specific sentence recommendation. Their agreement subsequently was rejected by the Circuit Court of St. Croix County, and Robert Weed's confession was suppressed. The district attorney then requested and obtained immunity for Robert Weed in order to use his statements as evidence against Stuart.

Richard Verduzco was never arrested nor questioned about the drug store robbery. Although he initially was charged with the crime, the charges were dropped when the district attorney determined that Robert Weed had been the man holding the shotgun during the robbery, not Verduzco.

Due to the immunity given to Fred and Robert Weed, the petitioner was the only person tried for the drug store robbery. The primary evidence introduced against him was the testimony of the Weed brothers that Stuart was the third robber in addition to themselves. The State also in-

troduced the testimony of Esther Drinkman, who stated that she had seen Stuart leaving a farm on the night of the robbery. According to the Weed brothers, the robbers had abandoned their car at that farm after the crime. Drinkman's testimony differed significantly, however, from that she had given at the preliminary hearing, particularly with respect to the number of cars she had seen leaving the farm.

In his defense, the petitioner sought to introduce two matters into evidence to demonstrate that he did not participate in the robbery and that either Verduzco or Donald Bell, a former partner of the Weeds in other criminal ventures, had. First, Stuart sought to admit the results of a polygraph test he had taken which indicated that he was being truthful when he denied robbing the drug store. Second, Stuart sought to obtain immunity for Bell, who had claimed the privilege against self-incrimination when questioned about this crime.

The trial court refused to admit the polygraph evidence because the district attorney had not signed a stipulation to admit the results of the test. The trial court also refused to grant immunity to Bell, but allowed him to appear as a defense witness and plead the Fifth Amendment privilege against self-incrimination when asked about the crime.

The trial concluded on June 26, 1980, following which the petitioner was convicted of armed robbery and sentenced to thirteen (13) years imprisonment. On May 20, 1981, the petitioner filed a post-conviction motion raising certain issues concerning his conviction and sentence. An evidentiary hearing was held on June 26, 1981, and, on November 10, 1981, the court entered a written order denying the post-conviction motion. The court's decision was affirmed by the Wisconsin Court of Appeals, and review of that decision was denied by the Wisconsin Supreme Court.

## II. Evidentiary Hearing

At the June 26, 1981 hearing on petitioner's post-conviction motion, District Attorney Lundell and defense counsel testified concerning the latter's proposals for a stipulation for the admission of the polygraph results and for a grant of immunity for defense witness Bell. With respect to the polygraph, the district attorney testified that the polygraph examination was originally his idea. Both Lundell and defense counsel testified, however, that neither party wished to enter into a stipulation prior to the examination because they had agreed that the purpose of the test was to facilitate evaluation of the case against Stuart and to provide leverage for a possible plea bargain. The first request for a stipulation to admit the test results came after the test was completed.

The district attorney gave the following reasons for refusing to stipulate to the admission of the test results: (1) the stipulation was requested only after the test had been taken; (2) the State had not participated in selecting the examiner or drafting the questions used; (3) he believed that Stuart was "polygraph-proof," *i.e.*, that Stuart knew certain tricks that would prevent detection of any lies he told; (4) Stuart was a convicted felon, and therefore not entitled to much credibility; and (5) he was convinced that Stuart had committed the crime, and any test indicating otherwise would be specious. Although defense counsel suggested the possibility of a second examination, hoping to resolve some of the objections to the first test, the district attorney did not follow up on the proposal.

With respect to the Bell immunity matter, the district attorney stated that he refused to request immunity for Bell because the district attorney had obtained from Bell a signed statement denying his involvement in the crime. The district attorney also testified that there was no evidence linking Bell to the crime, and that Bell did not fit the physical description of any of the robbers described by the witnesses.

Finally, as an explanation of why he did seek immunity for the Weed brothers in order to secure his case against Stuart, the district attorney testified as follows:

A. There are several reasons, some of which I have already enumerated at length; the tactical reasons that I have just gone through. I found myself in June of 1980 as having the best case against Earl Stuart. I had already committed myself on Fred Weed way back six months before to break the case open in the first place, and the way things happened, the case against Robert Weed was not in my estimation sufficient to take to trial without his statement, which had been suppressed. So I made the decision based upon those reasons and others.

Q. What others?

A. Well, Earl Stuart is a resident or a former resident of Glenwood City, Boyceville area, and that would be Eastern St. Croix County/Western Dunn County. He is well known through quite a few individuals in that area. Also, he has a certain reputation amongst law enforcement officers and prosecutors as being sort of a master burglar.

. . . .

At any rate, there was a sort of a community reason for pursuing the matter vigorously against Hap Stuart.

(Tr. Vol. 41, pp. 43, 44).

The petitioner claims that the district attorney's decisions to seek immunity for the Weed brothers, not to request immunity for Bell, and to refuse to stipulate to the admissibility of the polygraph results were tactical determinations which denied Stuart his right to a fair trial. The petitioner further claims that, given the improper nature of the district attorney's decisions, the trial court had a duty to ensure a fair trial by doing any or all of the following: (1) admitting the polygraph results; (2) granting immunity *sua sponte* to Bell; (3) denying the district attorney's motion for immunity for the Weed brothers; and (4) intervening in the district attorney's decision not to charge Verduzco.

Conversely, the respondent contends that the explanations advanced by the district attorney demonstrate that he acted well within the parameters of his discretionary authority. The respondent also claims that the trial court was neither obligated nor empowered to override those decisions. For the following reasons, the Court must reject the petitioner's arguments and deny his petition for a writ of habeas corpus.

### III. The District Attorney's Actions Did Not Deprive the Petitioner of a Fair Trial

A defendant in a criminal trial has a fundamental right to a fair opportunity to defend against the charges brought against him. This "fair opportunity to defend" is the essence of the concept of due process of law, some elements of which are the right to call witnesses in one's behalf, the right to examine adverse witnesses, and the right to assistance of counsel. *Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297 (1973).

The petitioner contends that the actions of the district attorney denied him a fair opportunity to defend against the State's charges. As his first argument, the petitioner claims that the district attorney's refusal to stipulate to the admissibility of the polygraph results denied the petitioner an opportunity to present exculpatory evidence in his defense.

### A. Polygraph Results

In *State v. Stanislawski*, 62 Wis.2d 730, 216 N.W.2d 8 (1974), the Wisconsin Supreme Court held for the first time that the results of polygraph examinations and expert testimony related thereto may be admitted into evidence. The court established specific requirements which must be met for the admission of such evidence, however:

"(1) That the district attorney, defendant and his counsel all sign a written stipulation providing for defendant's submission to the test and for the subsequent admission at trial of the graphs, and the examiner's opinion thereon on behalf of either defendant or the state.

(2) That notwithstanding the stipulation the admissibility of the test results

is subject to the discretion of the trial court, *i.e.*, if the trial judge is not convinced that the examiner is qualified or that the test was conducted under proper conditions he may refuse to accept such evidence.

(3) That if the graphs and examiner's opinion are offered in evidence the opposing party shall have the right to cross-examine the examiner respecting:

(a) the examiner's qualifications and training;

(b) the conditions under which the test was administered;

(c) the limitations of and possibilities for error in the technique of polygraphic interrogation; and

(d) at the discretion of the trial court, any other matters deemed pertinent to the inquiry.

(4) That if such evidence is admitted the trial judge should instruct the jury that the examiner's testimony does not tend to prove or disprove any element of the crime with which a defendant is charged but at most tends only to indicate whether at the time of the examination defendant was telling the truth. Further, the jury members should be instructed that it is for them to determine what corroborative weight and effect such testimony should be given."

62 Wis.2d at 743–744, 216 N.W.2d 8. Thus, the first hurdle to overcome by one seeking the admission of polygraph results into evidence is to obtain the approval of the opposing party; without such approval in the form of a written stipulation, polygraph results are inadmissible.

In support of his argument that the district attorney was obligated to stipulate to the admission of the polygraph results in this case, the petitioner cites *McMorris v. Israel*, 643 F.2d 458 (7th Cir.1981). In *McMorris*, the defendant had been tried and convicted of strong-armed robbery in Wisconsin state court. Since the State's case was based solely upon the testimony of the victim, who did not get a good look at the assailant, the credibility of the defendant was a major issue in the case. For the purpose of establishing his client's credibility, defense counsel wished to have his client take a polygraph examination, the results of which he hoped would be admitted into evidence. 643 F.2d at 459.

In order to comply with the first *Stanislawski* requirement, defense counsel contacted the district attorney seeking a stipulation for the admissibility of the polygraph results. After some initial indecision, the district attorney twice refused to enter into a stipulation, both times without any explanation. Following the defendant's trial and conviction, he took a polygraph examination which indicated that he had not committed the robbery. 643 F.2d at 460.

Upon review of the denial of the defendant's petition for a writ of habeas corpus, the Seventh Circuit Court of Appeals considered the constitutionality of both the *Stanislawski* stipulation requirement and the prosecutor's refusal to enter into a stipulation. While the court found that the stipulation requirement was at least defensible in view of the State's interest in admitting only reliable evidence, 643 F.2d at 643, the court held that the prosecutor's veto of the test under the circumstances present in that case was constitutionally impermissible. 643 F.2d at 466. In particular, the court was bothered by the prosecutor's failure to offer any explanation for his decision. Stating that a prosecutor may only refuse to enter into a *Stanislawski* stipulation "for justifiable reasons," 643 F.2d at 464, the court went on to speculate that the prosecutor in that case had, from all appearances, acted "solely for tactical reasons." 643 F.2d at 466. Had the prosecutor refused the stipulation and stated his reasons, however, it would then have become a question for the court to determine whether the reasons proffered were "purely tactical considerations" or not. *Id.*

While *McMorris* may be instructive, it is not determinative of the outcome in this case for the obvious reason that District Attorney Lundell stated several non-tactical reasons for rejecting the stipulation. The test that was conducted was done without any prior approval of the examiner or

the questions used, two factors that any competent prosecutor would wish to have some control over. The district attorney also stated that he believed Stuart to be "polygraph-proof," a non-tactical reason against stipulating to a second examination.

Although the petitioner argues that the district attorney had no basis for his belief that Stuart was "polygraph-proof," the petitioner admits that he had previously testified as a witness for the district attorney, thereby giving him ample opportunity to observe Stuart's characteristics and nature. The Court opines that a prosecutor who believes a test subject to be "polygraph-proof" is able to proffer one of the few purely non-tactical reasons for refusing a *Stanislawski* stipulation. The only other purely non-tactical reasons imaginable for rejecting a stipulation would be based on either the conditions under which the test was conducted or a complete lack of faith in the reliability of such examinations.

The desire to have both parties agree upon the reliability of any polygraph evidence submitted was the primary justification for instituting the stipulation requirement, as discussed by the Wisconsin Supreme Court in *State v. Dean*, 103 Wis.2d 228, 246–47, 307 N.W.2d 628 (1981):

> Whether or not the parties discuss and agree on the details of the testing to be administered to the defendant, the primary effect of the stipulation is that it operates as a waiver of objection or challenge to the validity of the basic theory of polygraph testing and eliminates the necessity of or the opportunity for the parties to establish a foundation in each case to satisfy the trial court of the basic theory and validity of polygraphs. If either party is not convinced of the reliability of polygraph testing, the party can refuse to stipulate to the test. *State v. Mendoza*, 80 Wis.2d 122, 186, 258 N.W.2d 260 (1977) (Robert Hansen, J. dissenting). As the court further explained in *Robinson v. State*, 100 Wis.2d 152, 162, 301 N.W.2d 429 (1981), "[t]he stipulation requirement set up by this

court in *Stanislawski* permits each of the parties to make an independent evaluation of the reliability of polygraph evidence and their willingness to rely on it."

Since one's belief in the reliability of the test is dependent in part upon one's faith that the subject examined is not "polygraph-proof," it is conceivable that a prosecutor's decision whether or not to stipulate might vary, for non-tactical reasons, on a case-by-case or witness-by-witness basis.

The court in *Dean* also discussed the *McMorris* decision, and stated that *McMorris* was "based on a mistaken interpretation of *Stanislawski*." 103 Wis.2d at 257, 307 N.W.2d 628. According to the court in *Dean*, the Seventh Circuit regarded the *Stanislawski* stipulation requirement as one that ensures the admission of only competent evidence, as opposed to one that seeks only the consent of the parties. This analysis was incorrect, the Wisconsin Supreme Court stated, because the *Stanislawski* stipulation requirement was indeed "based substantially on principles of consent and waiver rather than the principles of scientific reliability." 103 Wis.2d at 257, 307 N.W.2d 628. The consent and waiver of the parties was sought in order to ensure that there would be no objections at trial to the admissibility of the evidence because of its dubious reliability. 103 Wis.2d at 246, 307 N.W.2d 628.

In view of the discussion in *Dean* of the rationale behind the *Stanislawski* stipulation requirement, the Court finds that the district attorney stated valid, non-tactical reasons for refusing to stipulate to the admissibility of the results of the polygraph examination that had been taken. The Court also finds that the district attorney expressed legitimate, non-tactical reasons for rejecting any proposed stipulation to admit the results of a second test. Therefore, the petitioner's first argument that he was denied a fair trial because of the district attorney's refusal to enter into a *Stanislawski* stipulation is denied.

## B. Immunity for Defense Witness

The petitioner's second contention is that he was denied a fair trial because the

district attorney refused to request immunity for Donald Bell, who was called to testify on behalf of Stuart. The petitioner claims that immunity for Bell was required in light of the immunity granted to the Weed brothers, upon whose testimony the State's case was based.

■ Under state law, specifically Wis. Stat. § 972.08, a court may grant immunity to a witness only upon the motion of the district attorney. The defendant does not have the reciprocal power to request immunity for a witness. *State v. Koller*, 87 Wis.2d 253, 277, 274 N.W.2d 651 (1979); *Peters v. State*, 70 Wis.2d 22, 38, 233 N.W.2d 420 (1975). It is well established, however, that the one-sided power of a district attorney to request immunity for a witness does not violate a defendant's due process rights. *Sanders v. State*, 69 Wis.2d 242, 261–62, 230 N.W.2d 845 (1975); *Hebel v. State*, 60 Wis.2d 325, 331, 210 N.W.2d 695 (1973).

■ It is also well-settled that courts will ordinarily refuse to review a prosecutor's immunization decisions. *United States v. Frans*, 697 F.2d 188, 191 (7th Cir.1983); *In re Perlin*, 589 F.2d 260, 269 (7th Cir.1978). Courts will only review a prosecutor's immunization decisions when there has been "a clear abuse of discretion violating the due process clause." *Frans*, 697 F.2d at 191. In order to demonstrate such an abuse of discretion, the defendant must make "a substantial evidentiary showing that the government intended to distort the judicial fact-finding process." *Id.; see also United States v. Taylor*, 728 F.2d 930, 935 (7th Cir.1984).

The petitioner has not made the requisite showing that the district attorney intended to distort the fact-finding process by moving for immunity for the Weed brothers but refusing to do so for Bell. There was no evidence whatsoever linking Bell to the robbery; he did not match the physical description of any of the robbers, and the district attorney had no reason to believe that Bell had any knowledge concerning the crime. Certainly, the district attorney did not have reason to believe that, given

immunity, Bell could give truthful testimony implicating himself and exonerating Stuart.

On the other hand, the Weed brothers had confessed to the robbery and clearly were in a position to identify the third robber and elaborate upon the circumstances surrounding the crime. It was a rational decision, well within the bounds of his discretionary authority, for the district attorney to seek immunity for those whose testimony would be relevant and credible as opposed to a witness whose testimony apparently would be suspect and/or impertinent. The petitioner's second argument is therefore denied.

### C. Failure to Charge Verduzco

■ The petitioner's third argument is that he was denied a fair trial because the district attorney failed to charge Verduzco, who was identified by two witnesses as one of the three robbers. Since Verduzco was not charged, the petitioner claims his conviction was guaranteed.

As courts are loathe to review a prosecutor's immunity decisions, they are equally reluctant to intrude upon a prosecutor's broad discretion in determining whom to charge. *State v. Hooper*, 101 Wis.2d 517, 532, 305 N.W.2d 110 (1981); *State v. Karpinski*, 92 Wis.2d 599, 607, 285 N.W.2d 729 (1979); *State v. Kenyon*, 85 Wis.2d 36, 42, 270 N.W.2d 160 (1978). "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring ... generally rests entirely in his discretion." *Wayte v. United States*, —— U.S. ——, ——, 105 S.Ct. 1524, 1531, 84 L.Ed.2d 547 (1985), *quoting Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978). A prosecutor's authority to determine whom to charge is only qualified by the limits imposed by the legislature, *Kenyon*, 85 Wis.2d at 42, 270 N.W.2d 160, and the constitutional proscription against basing charging decisions on some unjustifiable standard such as "race, religion, or other arbitrary classifica-

tion." *Bordenkircher*, 434 U.S. at 364, 98 S.Ct. at 668. *Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962); *Sears v. State*, 94 Wis.2d 128, 134, 287 N.W.2d 785 (1979).

The petitioner has not alleged that the decision to charge him and not to charge Verduzco was based on race, religion, or some other arbitrary classification. The petitioner has also not claimed that the district attorney exceeded the bounds of his authority granted by the state legislature. The Court believes that the charges originally brought against Verduzco were dropped because of the mistaken identification of Verduzco as the man who held the shotgun, when in fact it was Robert Weed who had done so. The petitioner has not met his burden of demonstrating that the district attorney in any way exceeded his authority in dropping the charges against Verduzco. Accordingly, petitioner's third argument is rejected.

### IV. Trial Court's Actions Did Not Deny the Petitioner a Fair Trial

In addition to his contentions that the various actions of the district attorney deprived him of his due process right to a fair trial, the petitioner claims that the trial court should have intervened in order to ensure a fair trial. In particular, petitioner states that the trial court should have: admitted the polygraph results into evidence; granted immunity to Donald Bell; denied the district attorney's motion for immunity for the Weed brothers; and required the district attorney to charge Verduzco.

For the reasons just discussed above, the Court does not believe that it would have been prudent or permissible for the trial court to intervene in the district attorney's charging decisions. It is the province and duty of the district attorney to determine whom to charge, and courts will only review such determinations under the circumstances discussed above. Those circumstances not existing in this case, the trial court appropriately refrained from intervening.

With respect to the immunity question, Wis.Stat. § 972.08(1) prescribes the procedure for granting immunity: it may only be done upon the motion of the district attorney. Trial courts may not, *sua sponte*, grant immunity to any witness. *Shelley v. State*, 89 Wis.2d 263, 277, 278 N.W.2d 251 (1979).

The Court also believes, for the reasons discussed above, that there were ample, non-tactical reasons for the district attorney to seek immunity for the Weed brothers, and not to request it for Bell. The district attorney had attempted to obtain approval of a plea bargain made with Robert Weed, but the Circuit Court of St. Croix County rejected it. Believing that he needed Robert Weed's testimony to convict Stuart, the only option available to the district attorney was to seek immunity for Robert Weed. The Court opines that it would have been manifestly unjust for the trial court to deprive the State of what it considered to be the essential testimony of its witness by rejecting the plea agreement and refusing immunity.

Finally, with respect to the polygraph issue, the Wisconsin Supreme Court in *Stanislawski* made it clear that a stipulation between the parties was an absolute prerequisite to the admission of polygraph evidence. The court's position was restated even more forcefully in *Dean*. 103 Wis.2d at 279, 307 N.W.2d 628.[1] The trial court was not entitled to invoke its discretionary authority to decide whether to admit the polygraph evidence until the stipulation requirement was fulfilled. Furthermore, it would have frustrated the purpose of the stipulation requirement, that being to ensure the parties' assent to the reliability of the test results, had the court direct-

---

1. It should be noted that, as a result of the Wisconsin Supreme Court's holding in *Dean*, polygraph evidence is no longer admissible for any purpose in criminal proceedings in Wisconsin State Courts. The court did allow such evidence to continue to be admitted if a *Stanislawski* stipulation was entered into before September 1, 1981, however. 103 Wis.2d at 279, 307 N.W.2d 628.

ed the district attorney to sign a stipulation.

For the foregoing reasons, the Court finds that the petitioner was not denied a fair trial and hereby **DENIES** his petition for a writ of habeas corpus.