# COURT OF APPEALS
## DECISION
## DATED AND FILED

## February 20, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP490-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2020CF806

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

PHILLIP A. JORDAN,

    DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Dane County: NICHOLAS J. MCNAMARA, Judge. *Affirmed*.

Before Kloppenburg, P.J., Graham, and Taylor, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Phillip A. Jordan appeals a judgment of conviction and the order denying his postconviction motion for resentencing.   On appeal, Jordan argues that the circuit court improperly extended his sentence based on his refusal to admit guilt and his lack of remorse, and improperly held Jordan's decision to go to trial and his trial strategy against him.   We disagree and affirm.

## BACKGROUND

¶2     Jordan was convicted of various crimes following separate assaults he perpetrated against two women.   The first incident took place in March 2020, and Jordan's former girlfriend, A.B., was the victim.[1]   According to A.B.'s report and subsequent trial testimony, A.B. and Jordan were inside of a storage unit they shared when the assault occurred.   Jordan, who had been drinking, became angry when he saw a stuffed bear in the unit, apparently believing that it had been a gift from another man.   Jordan called A.B. names, pushed her down, hit and choked her, pulled her pants down, and pressed his penis against her leg.   After a struggle, A.B. was able to call 9-1-1 and Jordan fled.

¶3     The second incident occurred ten days later at a motel where Jordan and the victim, Y.Z., were both staying.   Y.Z. did not know Jordan, aside from having seen him on occasion at a local church.   According to Y.Z.'s report and subsequent trial testimony, Y.Z. was walking through a hallway at the motel when Jordan grabbed her and pulled her into his room.   He threw her onto the bed, pulled down her shorts and undergarments, brandished a knife, and told Y.Z. that

---

[1] To protect their privacy, we refer to the victims using initials that do not correspond to their real names.  *See* WIS. STAT. RULE 809.86 (2021-22).  All references to the Wisconsin Statutes are to the 2021-22 version.

he "would stab [her] through the heart and nobody would care, nobody would notice." Jordan pulled down his pants and began to slap his penis against Y.Z.'s vagina. Y.Z. was eventually able to escape and fled to her room, where she reported the assault to her partner and the police.

¶4    The State filed a criminal complaint that charged Jordan with multiple crimes pertaining to the two incidents. Regarding the assault of A.B., the State charged Jordan with attempted second-degree sexual assault, fourth-degree sexual assault, strangulation and suffocation, and misdemeanor battery. Regarding the assault of Y.Z., the State charged Jordan with second-degree sexual assault, fourth-degree sexual assault, and disorderly conduct while using a dangerous weapon. Finally, the State charged Jordan with two counts of misdemeanor bail jumping.

¶5    The case proceeded to a jury trial. A.B. and Y.Z. both testified, as did a number of other witnesses for the prosecution. Jordan did not testify, nor did the defense call any witnesses. Instead, Jordan's trial counsel used his cross-examinations and closing argument to attempt to challenge the veracity of the accounts that A.B. and Y.Z. had given.[2]

¶6    The jury acquitted Jordan of the sexual assault charge involving A.B. It found Jordan guilty of the remaining charges—one count of strangulation

---

[2] Specifically with respect to A.B., trial counsel suggested that she fabricated the allegations because Jordan stopped giving her money, and that A.B. told Jordan that the jury would believe her allegations because A.B. is white and Jordan is black. Counsel also argued that A.B. should not be believed because she told a nurse that Jordan had ejaculated on her thigh, but semen was not detected in a lab analysis of a swab of biological material taken from A.B.'s thigh. Counsel's attempt to cast doubt on Y.Z.'s allegations was more limited, and primarily focused on purported inconsistencies in Y.Z.'s description of the motel and the knife.

and suffocation and one count of battery pertaining to the assault of A.B., the two counts of sexual assault and one count of disorderly conduct while using a dangerous weapon that pertain to the assault of Y.Z., and both bail jumping counts.

¶7    In preparation for sentencing, the circuit court ordered a presentence investigation report. During an interview with the state department of corrections employee who authored the report, Jordan asserted that he was innocent and was the real victim in this matter. Among other things, he said that A.B. and Y.Z. "got under oath and lied," that "they should be the ones charged," and that he was "the victim here" because he was "sitting in jail for something that [he] didn't do."[3] The author opined that Jordan's perception of events was "extremely anti-social," and that he "perseverate[d] only on the effects [to] himself." The author further opined that Jordan "expressed zero remorse or regret for his actions," and that he had not only "convinced himself of his innocence … [in] this matter, but [also of his innocence with regard to] his entire adult criminal history."

¶8    At Jordan's sentencing hearing, the prosecutor and trial counsel both focused on Jordan's age (almost 62 years old) and the role that alcohol played in the crimes for which he was being sentenced and in his other contacts with police. The prosecutor argued that Jordan "reports that he has no problem with alcohol or with crime," and had "no self-awareness of how his alcohol use is a problem and how that has led to him becoming a violent person." However, the prosecutor

---

[3] At sentencing, Jordan's trial counsel was given the opportunity to challenge the accuracy of any statements in the presentence investigation report. *See* WIS. STAT. § 972.15(2). Counsel did not assert that Jordan was misquoted, or that the report attributed statements to Jordan that he had not made.

argued, the reality was that Jordan had had dozens of police contacts related to drunken and inappropriate behavior, with the charged conduct demonstrating a "severe escalation in … violent conduct." The prosecutor argued that Jordan had "no interest in change" and, at his age, he was unlikely to turn his attitude and behavior around. In response, Jordan's trial counsel acknowledged that alcohol was a problem for Jordan, but argued that his age should be considered a mitigating factor because Jordan had already served significant pretrial custody and, if given a lengthy sentence, Jordan would achieve "senior status" while incarcerated.

¶9   During his allocution, Jordan repeatedly told the sentencing court that he was innocent, and he referenced a video recording that had not been presented at trial but would, he asserted, prove his innocence of the crimes involving Y.Z. According to Jordan, the video depicted the hallway of the motel where the attack against Y.Z. allegedly began, and it would show that Jordan did not grab Y.Z. Jordan blamed his lawyers for failing him, and he argued that Y.Z. should not be believed because her account had changed. Towards the end of the allocution, trial counsel advised Jordan to "not speak further on the facts of the case as it may ultimately affect any appellate issues."

¶10   The circuit court then began its sentencing remarks, which are the subject of this appeal. The court commented that it was "unusual" for a defendant to be insisting on his innocence at sentencing, but the court also understood that innocent people are sometimes convicted and the court did not "have perfect knowledge" of what occurred. Regarding the video that Jordan asserted would prove his innocence, the court stated: "If there's a tape, I haven't seen it. And I don't know what it would show. And whatever it shows, I have no way of concluding for sure that it contradicts [Y.Z.'s trial] testimony."

5

¶11 However, the circuit court continued, it believed that "the jury got the verdicts correct," and it articulated its reasons for crediting the victims' accounts. More specifically, the court commented on why it did not credit Jordan's assertions that A.B. and Y.Z. "had an agenda" against him, and on the effects that Jordan's actions had on the victims:

> You have an absolute, fundamental right to have a jury trial and require the State to prove you guilty beyond a reasonable doubt. And you will not be sentenced today because you simply asked that the rights everybody has here in this country be followed. But you don't have a right to lie, you don't have a right to deceive, and you don't have a right to be believed. I don't believe you. I don't believe you when you claim these victims are acting with a hidden agenda to hurt you in some way. These people not only were hurt on the day that you strangled one, put a knife to the neck and body of another and sexually assaulted her. They were traumatized in the trial and that's unfortunately part of the process. And I don't blame you for that. But that convinces me that these were victims from genuine points of harm that you caused. They needed to make it right for themselves and for the rest of the world. They showed great bravery in not only reporting it to the police, but in coming here in this courtroom and coming in front of a court gallery and a jury and telling the story as best they could, knowing that they would be cross-examined, knowing that they would remember things that they would rather forget, that they had been trying to forget.

The court told Jordan: "[T]he fact that you insist on your innocence[] doesn't change my own view of the evidence of your guilt. I will sentence you as guilty."

¶12 Ultimately, the circuit court imposed ten years of initial confinement and five years of extended supervision—a sentence that was well below the maximum exposure that Jordan faced. The court's explanation for the sentence addressed the gravity of the offense, Jordan's character and prior criminal history, his need for rehabilitation, and the need to protect the community. *See McCleary v. State*, 49 Wis. 2d 263, 281, 182 N.W.2d 512 (1971) (a sentencing court must

provide a statement "detailing [the] reasons for selecting the particular sentence imposed"); ***State v. Gayton***, 2016 WI 58, ¶22, 370 Wis. 2d 264, 882 N.W.2d 459 (the sentencing court must consider the protection of the public, the gravity of the offense, and the rehabilitative needs of the defendant). The court stated:

> [T]he gravity of what you've done, the total exposure combined, I think comes to 40, almost 50 years of incarceration, just less. The viciousness, the aggravated nature of it, a weapon involved, strangulation, threats, as well as sexual assault.
>
> If I had another way to measure the gravity of [the offense] and [what] a fair sentence would be [is] how long is it going to take the victims of your crimes to feel like things are pretty much back to normal, and that's never going to be the case. They'll always have a sense of loss. They're survivors and they've showed courage and strength already and they will recover that as well, but they're permanently changed because of what you did….
>
> I'm supposed to consider your character, some of the good things that you've done. You don't come here with a horrific history of violent crimes. There are some crimes, most of them nuisance as was commented on earlier. I understand that you think you're innocent, but the outcome of that is you've not shown remorse, cooperation, your need for rehabilitation is even greater because you haven't accepted responsibility and you're entitled to not. But that makes you[,] I think[,] more dangerous. It's going to make a need for confinement, for treatment in a confined setting more significant, a little longer.
>
> I mentioned the gravity and your character, the other is to protect the public, and that means not just the general public, but the actual victims here, and anyone else you're going to meet. [Even people in their seventies are] absolutely capable of causing great harm, particularly given a lot of alcohol, a knife or a gun. If you're not ready to change, the community's at risk. Even people close to you might be at risk if that's who you're gonna be.

¶13 Jordan filed a postconviction motion, arguing that the circuit court erroneously exercised its discretion by improperly punishing him for exercising

his right to a trial, "the perceived falsity of the theory of defense," and not expressing remorse. The court denied the motion, and Jordan appeals.

## DISCUSSION

¶14    Sentencing is within the discretion of the circuit court, and appellate review is limited to determining whether there was an erroneous exercise of discretion. *State v. Gallion*, 2004 WI 42, ¶17, 270 Wis. 2d 535, 678 N.W.2d 197. We give sentencing decisions "a strong presumption of reasonability because the circuit court is best suited to consider the relevant factors and demeanor of the convicted defendant," *id.*, ¶18 (citation omitted); therefore, the defendant has a heavy burden to show an erroneous exercise of discretion, *State v. Harris*, 2010 WI 79, ¶30, 326 Wis. 2d 685, 786 N.W.2d 409.

¶15    A sentencing court erroneously exercises its discretion if it "actual[ly] reli[ed] upon clearly irrelevant or improper factors." *Id.* As mentioned, Jordan argues that the court improperly imposed a longer sentence based on his refusal to admit guilt and lack of remorse, and that the court improperly held Jordan's decision to go to trial and trial strategy against him. We address the arguments in that order.

### I. Refusal to Admit Guilt and Lack of Remorse

¶16    The Fifth Amendment right against self-incrimination "extends to sentencing." *State v. Pico*, 2018 WI 66, ¶49, 382 Wis. 2d 273, 914 N.W.2d 95 (citing U.S. CONST. amend. V). Consistent with this protection, a sentencing court may not "attempt to compel an admission of guilt" at sentencing, nor may the court impose "a harsher sentence solely because the defendant refused to admit guilt." *State v. Fuerst*, 181 Wis. 2d 903, 915, 512 N.W.2d 243 (Ct. App. 1994).

8

¶17 That does not mean it is wholly out of bounds for the sentencing court to consider a defendant's refusal to admit guilt. A sentencing court may consider a defendant's refusal to admit guilt "as an indication of his lack of remorse." *Id.* at 916. And, a lack of remorse "may well be relevant" to certain factors that the court is obligated to consider at sentencing, such as "the defendant's demeanor, [the] need for rehabilitation, and the extent to which the public might be endangered by [the defendant] being at large." *State v. Baldwin*, 101 Wis. 2d 441, 459, 304 N.W.2d 742 (1981). Accordingly, a sentencing court does not erroneously exercise its discretion if it considers a defendant's lack of remorse "as one factor amongst many," *Pico*, 382 Wis. 2d 273, ¶52, or if the court's consideration of lack of remorse "bears 'a reasonable nexus' to a relevant, proper factor," *State v. Dodson*, 2022 WI 5, ¶10, 400 Wis. 2d 313, 969 N.W.2d 225 (citation omitted).

¶18 Instead, to demonstrate an erroneous exercise of discretion, a defendant must show that the defendant's refusal to admit guilt or lack of remorse was given "undue and almost overwhelming weight," *Baldwin*, 101 Wis. 2d at 457, and was essentially "the north star in developing [the] sentence," *Pico*, 382 Wis. 2d 273, ¶52. As our case law shows, this ultimately requires a defendant to demonstrate that the sentencing court imposed a harsher sentence solely because of the defendant's refusal to admit guilt or lack of remorse. *See Scales v. State*, 64 Wis. 2d 485, 495-97, 219 N.W.2d 286 (1974) (sentencing court erroneously exercised its discretion when it imposed incarceration rather than probation because the defendant refused to admit guilt); *Pico*, 382 Wis. 2d 273, ¶54 ("there is no evidence the circuit court imposed a longer sentence on Mr. Pico because of his continued assertion of innocence"); *Baldwin*, 101 Wis. 2d at 459 ("a defendant must not be subject to greater penalties for having exercised [the] right against

9

self-incrimination"). It is the defendant's burden to make this showing. *See State v. Ramuta*, 2003 WI App 80, ¶23, 261 Wis. 2d 784, 661 N.W.2d 483.

¶19 We first address Jordan's argument about the circuit court's remarks regarding Jordan's assertions of innocence. As mentioned, immediately after Jordan's allocution, the court stated that, in its experience, Jordan's insistence on innocence at sentencing was "unusual"; that the court would not be considering the alleged video that Jordan asserted would exonerate him; and that, despite Jordan's claims of innocence, the court believed that he was guilty. *See supra*, ¶¶10-11. Jordan argues that, by discussing his claim of innocence at that length, the circuit court gave his refusal to admit guilt "undue attention beyond any other sentencing factor." We disagree.

¶20 It is true the transcript shows that the circuit court gave a great deal of attention to Jordan's claim that he was innocent. However, a court does not erroneously exercise its discretion merely by addressing a topic that has been raised during the sentencing hearing, even if it would be improper to base the sentence upon that factor. *See Dodson*, 400 Wis. 2d 313, ¶10 (it is not enough to show that "'explicit attention' [was given] to an improper factor," a defendant must show that the improper factor was "a part of the 'basis for the sentence'" (citation omitted)).

¶21 Here, as mentioned, the circuit court's remarks occurred in response to Jordan's assertions that there was evidence that had not been presented at trial that would prove his innocence (at least as to the assault of Y.Z.). Based on these assertions, the court evidently sensed that Jordan did not grasp the limitations of the sentencing hearing, in which the jury had already determined his guilt. Under the circumstances, it was reasonable for the court to begin its remarks by

responding to Jordan's assertions, and more specifically, by explaining that it would not be considering evidence that had not been presented at trial. It was likewise appropriate for the court to explain that it could make its own inferences about Jordan's guilt and was not required to credit his assertions of innocence. *See Anderson v. State*, 76 Wis. 2d 361, 369, 251 N.W.2d 768 (1977) (a circuit court may assess the defendant's credibility at sentencing and is not required to accept a defendant's claims). Based on this context, we do not interpret the court's sentencing remarks as supporting Jordan's claim that the court erroneously exercised its discretion by giving his refusal to admit guilt improper weight.

¶22 We now turn to Jordan's argument about the circuit court's remarks regarding Jordan's lack of remorse. We review a court's "articulation of its basis for sentencing in the context of the entire sentencing transcript," *State v. Alexander*, 2015 WI 6, ¶25, 360 Wis. 2d 292, 858 N.W.2d 662, and here, our review demonstrates that the court considered Jordan's lack of remorse "as one factor amongst many," *Pico*, 382 Wis. 2d 273, ¶52. In addition to considering Jordan's lack of remorse, the court also considered the gravity of the offenses, Jordan's character, his past offenses, his potential for rehabilitation, and the protection of the community. *See supra*, ¶12; *see also Dodson*, 400 Wis. 2d 313, ¶9 (explaining that these are all relevant sentencing considerations). Accordingly, it is evident that Jordan's lack of remorse was not the "sole cause" of the sentence the court imposed. *Dodson*, 400 Wis. 2d 313, ¶10.

¶23 To be sure, Jordan points to a portion of the above-quoted passage that, he argues, shows that the circuit court "explicitly linked [his] lack of remorse to the decision to impose a longer sentence than would have otherwise been imposed." In that portion of its remarks, the court stated:

> I understand that you think you're innocent, but the outcome of that is you've not shown remorse, cooperation, your need for rehabilitation is even greater because you haven't accepted responsibility and you're entitled to not. But that makes you[,] I think[,] more dangerous. *It's going to make a need for confinement, for treatment in a confined setting more significant, a little longer.* (Emphasis added.)

¶24 There is, at first blush, some intuitive appeal to Jordan's interpretation of the circuit court's comments—in the same breath that the court referenced Jordan's lack of remorse, it also stated that the need for confinement and treatment was "more significant" and needed to be "a little longer." However, as mentioned, we consider "potentially inappropriate [sentencing] comments in context," *Harris*, 326 Wis. 2d 685, ¶45, and Jordan's interpretation of the court's remarks ignores significant portions of the cited passage.

¶25 Considering the sentencing remarks as a whole, it is clear that the circuit court did not "impose a harsher sentence because, after a finding of guilt, [Jordan] refused to admit guilt," as was the case in *Scales*, 64 Wis. 2d 485, 495. Rather, the court considered how Jordan's lack of remorse and failure to accept responsibility for his actions factored into its consideration of the primary sentencing objectives. More specifically, the court reasoned that Jordan's refusal to accept responsibility—for these crimes, but also more generally his refusal to acknowledge rehabilitative needs concerning alcohol use, and how it factored into his criminal conduct—made Jordan "more dangerous" to society, and resulted in a "greater" need for rehabilitation in a confined setting. *See Fuerst*, 181 Wis. 2d 903, 915-16 (doing the same); *Dodson*, 400 Wis. 2d 313, ¶9 (rehabilitation and protection of the community are both "valid sentencing objectives"). Under the circumstances, we are not persuaded that the court erred. *Dodson*, 400 Wis. 2d 313, ¶10 (a court does not erroneously exercise its discretion if its "reference to a

12

challenged factor bears 'a reasonable nexus' to a relevant, proper factor." (citation omitted)).

¶26    For all the reasons explained above, we conclude that the sentencing court did not erroneously exercise its discretion in its consideration of Jordan's refusal to admit guilt and his lack of remorse.[4]

## II. Trial Decision and Trial Strategy

¶27    Jordan also argues that the circuit court improperly based the sentence on Jordan's decision to go to trial and the trial strategy of attempting to discredit the victims that his counsel pursued.  We disagree for reasons we now explain.

¶28    We begin by acknowledging that the premise of Jordan's argument is sound—it would be improper for the sentencing court to penalize Jordan for exercising his constitutional rights to a jury trial.  *See* U.S. CONST. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial…."); *State v. Kiernan*, 221 Wis. 2d 126, 144, 584 N.W.2d 203 (Ct. App. 1998) (a defendant has the due process right "to mount an adequate defense against the State's accusations").

---

[4] In passing references in his appellate briefing, Jordan appears to take issue with the circuit court's statements related to his acquittal on the sexual assault charges pertaining to A.B. Beyond bare references to these comments, Jordan does not develop an argument that the comments were somehow improper, or that the court erroneously based the sentence on the charges for which he was acquitted. *See Techworks, LLC v. Wille*, 2009 WI App 101, ¶27, 318 Wis. 2d 488, 770 N.W.2d 727 (we are not required to entertain undeveloped arguments).  Any such argument would be unsupported by the record, given that the court explicitly stated that Jordan was "not being sentenced for" sexually assaulting A.B.

13

¶29 That said, our review of the record demonstrates that the circuit court did not penalize Jordan for his decision to go to trial, or for the trial strategy that his counsel pursued. On these topics, Jordan focuses his argument on the following comments from the court. The court specifically stated that it did not believe Jordan's claim that the victims, "who never met each other" and "gained nothing" from accusing Jordan, were "acting with a hidden agenda to hurt [Jordan] in some way." The court also discussed the impact that the trial had on the victims, observing that, in the court's view, the victims were "traumatized" by the trial, and that they showed "great bravery … in coming here in this courtroom … and telling the story as best they could, knowing that they would be cross-examined" and "would remember things that they would rather forget." The court nevertheless acknowledged that this was "unfortunately part of the process," and that the court did not "blame [Jordan] for that."

¶30 Considering the circuit court's comments in their entirety, we conclude that they do not demonstrate that the court penalized Jordan for exercising his right to a trial or his defense strategy. On the contrary, the court explicitly acknowledged that Jordan would "not be sentenced" for exercising his constitutional right to a trial, or for any effect that the trial process had on the victims, as the court did not "blame [Jordan] for that." Under the circumstances, Jordan fails to persuade us that the court erroneously exercised its discretion.

¶31 Finally, Jordan points to the circuit court's statements that Jordan did not have a right to lie or to be believed, and that the court did not believe him. As we understand it, Jordan is arguing that it was improper for the court to infer that he was untruthful because Jordan exercised his right to not testify at trial. This argument is unfounded. Although Jordan did not testify at trial, the court could draw conclusions about his truthfulness from the statements he made to the author

14

of the presentence investigation report and during his allocution. *See **State v. Macemon***, 113 Wis. 2d 662, 667, 335 N.W.2d 402 (1983) (providing that the sentencing court may consider "the results of the presentence investigation"); ***Pico***, 382 Wis. 2d 273, ¶49 (in exercising the right of allocution, "a defendant may waive his Fifth Amendment right against self-incrimination in a bid for a lighter sentence"). In both settings, Jordan repeatedly expressed that the victims were lying and that he was innocent. Thus, Jordan put his character for truthfulness at issue, and the court could infer that he was being untruthful, and could consider that inference when it imposed the sentence. *See **State v. Heffran***, 129 Wis. 2d 156, 163, 384 N.W.2d 351 (1986) ("[A] sentencing court must have considerable latitude in … considering all information which might aid in forming an intelligent and informed judgment regarding the appropriate penalty …."); ***Gallion***, 270 Wis. 2d 535, ¶43 n.11 (a "defendant's personality, character, and social traits" are relevant sentencing considerations).

## CONCLUSION

¶32 For all the reasons explained above, we conclude that the circuit court did not erroneously exercise its discretion.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

15